BROOKS R. BROWN (SBN 250724)
*bbrown@goodwinprocter.com*
**GOODWIN PROCTER LLP**
10250 Constellation Blvd.
Los Angeles, CA 90067
Tel.: 310.788.5100
Fax: 310.286.0992

ROBERT B. BADER (SBN 233165)
*rbader@goodwinprocter.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center, 24th Floor
San Francisco, California 94111
Tel.: 415.733.6000
Fax.: 415.677.9041

Attorneys for Defendant:
*Wells Fargo Bank, N.A.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

SOUND APPRAISAL and SAVAGE APPRAISAL SERVICES, INC., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

WELLS FARGO BANK, N.A. and VALUATION INFORMATION TECHNOLOGY, LLC, d/b/a RELS VALUATION,

Defendants.

Case No. 4:09-cv-01630-CW

**WELLS FARGO BANK, N.A.'S MOTION TO DISMISS CLASS ACTION COMPLAINT**

Date: September 17, 2009
Time: 2:00 p.m.
Courtroom: Courtroom 2, 4th Floor
Judge: Honorable Claudia Wilken

Filed/Lodged Herewith:

1. Appendix of Westlaw/Lexis Cases
2. [Proposed] Order

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

## TABLE OF CONTENTS

**Notice of Motion and Motion to Dismiss** ..... i
**Statement of the Issues to be Decided** ..... 1
**Memorandum of Points and Authorities** ..... 2
- **INTRODUCTION** ..... 2
- **FACTUAL ALLEGATIONS** ..... 4
- **STANDARD** ..... 4
  - **I. Wells Fargo Bank, N.A. Should Be Dismissed.** ..... 6
  - **II. The Complaint Does Not State A RICO Claim.** ..... 6
    - **A. Plaintiffs Fail To Allege A "Pattern" of "Racketeering Activity."** ..... 7
      - **1. Plaintiffs Do Not Properly Allege A Predicate Act Of Mail Or Wire Fraud.** ..... 7
        - **i. Plaintiffs Do Not Allege Any Misrepresentations or Fraudulent Conduct by Wells Fargo.** ..... 8
        - **ii. Confidential Witness Statements Cannot Support Fraud.** ..... 12
      - **2. Plaintiffs' Other Allegations Do Not Constitute RICO Predicate Acts.** ..... 13
    - **B. Plaintiffs Fail To Allege A Cognizable RICO Enterprise That Proximately Caused Them Harm.** ..... 15
      - **1. The "Wells Fargo Brokerage Enterprise" Is Not Cognizable.** ..... 15
      - **2. Plaintiffs Do Not Allege That They Were Proximately Harmed By The Associated-In-Fact Enterprises.** ..... 18
  - **III. Plaintiffs' State Law Claims Also Fail.** ..... 19
    - **A. Plaintiffs Lack Standing to Bring the UCL Claim.** ..... 19
    - **B. The Allegations Do Not Otherwise Support a UCL Claim.** ..... 20
    - **C. Plaintiffs Do Not State a Claim for Interference with Prospective Economic Advantage.** ..... 22
- **CONCLUSION** ..... 25

## TABLE OF AUTHORITIES

**CASES:** **PAGE(S)**

*Aho Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-cv-04133-SBA, 2008 WL 4830708 (N.D. Cal. Nov. 6, 2008) ........ 24

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ........ 18

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ........ 1, 4, 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........ passim

*Bomanite Corp. v. Cathay Pigments (USA), Inc.*, No. 104CV05333OWWSMS, 2005 WL 1661899 (E.D. Cal. July 14, 2005) ........ 23

*Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444 (S.D.N.Y. 2007) ........ 15, 16

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999) ........ 21

*Certain Underwriters at Lloyd's, London v. Real Estate Prof'ls Ins. Co.*, No. CV-06-4783 CAS (JWJx), 2007 WL 4249078 (C.D. Cal. Nov. 26, 2007) ........ 22

*Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 90 Cal. Rptr. 3d. 455 (Cal Ct. App. 2009) ........ 20

*Clark v. Time Warner Cable*, 523 F.3d 1110 (9th Cir. 2008) ........ 7, 14

*Computer Scis. Corp. v. Computer Assocs. Int'l, Inc.*, Nos. CV98-1374-WMB SHX, CV 98-1440-WMB SHX, 1999 WL 675446 (C.D. Cal. Aug. 12, 1999) ........ 23

*CRST Van Expedited, Inc. v. Werner Enters.*, 479 F.3d 1099 (9th Cir. 2007) ........ 24

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376 (1995) ........ 24

*Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) ........ 7

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004) ........ passim

*Fifty Assocs. v. Prudential Ins. Co. of America*, 450 F.2d 1007 (9th Cir. 1971) ........ 11

*First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994) ........ 16

*Hernandez v. Downey Savs. & Loan Ass'n*, No. C 08-05732 JF (PVT), 2009 U.S. Dist. LEXIS 24205 (N.D. Cal. Mar. 13, 2009) ........ 8

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992) ........ 18

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

*Howard v. America Online Inc.*, 208 F.3d 741 (9th Cir. 2000) .................................................. 14

*In re Actimmune Mktg. Litig.*, No. C 08-02376-MHP, 2009 U.S. Dist. LEXIS 36133 (N.D. Cal. Apr. 28, 2009)........................................................ 8

*In re Calpine Corp. ERISA Litig.*, No. C 03-1685 SBA, 2005 U.S. Dist. LEXIS 34452 (N.D. Cal. Dec. 5, 2005) ...................................................... 12

*In re Daou Sys. Inc.*, 411 F.3d 1006 (9th Cir. 2005)................................................................... 13

*In re Ins. Brokerage Antitrust Litig.*, Nos. 04-5184 (GEB), 05-1079 (GEB), 2007 U.S. Dist. LEXIS 73220 (D.N.J. Sept. 28, 2007)......................................................... 16

*In re Managed Care Litig.*, 135 F. Supp. 2d 1253 (S.D. Fla. 2001) ............................................ 17

*In re MIPS Techs., Inc.*, No. C-06-06699, 2008 WL 3823726 (N.D. Cal. Aug. 13. 2008)...................................................................... 13

*In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172 (D. Mass. 2003) ........................................................................... 16

*In re Tobacco II Cases*, No. S1473545, 2009 WL 1362556 (Cal. May 18, 2009) ........................................................................... 19

*ITI Internet Servs., Inc. v. Solana Capital Partners, Inc.*, No. C05-2010Z, 2006 WL1789029 (W.D. Wash. June 27, 2006)........................................................................ 6

*Kasparian v. County of L.A.*, 45 Cal Rptr. 2d 90 (Cal. Ct. App. 1995) ....................................... 23

*Kinghorn v. Citibank, N.A.*, No. C 97-3111 FMS, 1999 WL 30534 (N.D. Cal. Jan. 20, 1999) ........................................................................... 10

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)........................... 19, 22, 24

*Kruse v. Bank of Am.*, 248 Cal. Rptr. 217 (Cal. Ct. App. 1988) ........................................... 23,424

*Lewis v. Sporck*, 612 F. Supp. 1316 (N.D. Cal. 1985) .................................................................... 9

*Loe v. State Farm Ins. Cos.*, Nos. 96-55553, 96-55842, 164 F.3d 630, 1998 WL 690923 (9th Cir. Sept. 25, 1998) .................................................... 21

*Lozano v. AT&T Wireless Servs. Inc.*, 504 F.3d 718 (9th Cir. 2007)........................................... 12

*Marks v. City of Seattle*, No. C03-1701, 2003 WL 23024522 (W.D. Wash. Oct. 16, 2003) ............................................................... 13

*Marks v. Ocwen Loan Servicing.*, No. C 07-2133 SI, 2009 U.S. Dist. LEXIS 35251 (N.D. Cal. Apr. 10, 2009)....................................................... 8



GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

*Mehmet v. PayPal, Inc.*, No. C-08-01961 RMW, 2009 U.S. Dist. LEXIS 29846 (N.D. Cal. Mar. 26, 2009) .......... 8

*Miller v. Yokohama Tire Corp.*, 358 F.3d 616 (9th Cir. 2004) .......... 11

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989) .......... 5

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059 (C.D. Cal. 2003) .......... 20

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) .......... 12

*New York Auto. Ins. Plan v. All Purpose Agency & Brokerage, Inc.*, No. 97 Civ. 3164 (KTD), 1998 WL 695869 (S.D.N.Y. Oct. 6, 1998) .......... 16

*Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082 (N.D. Cal. 2006) .......... 17

*Nu Science Corp. v. Efasteam.com*, No. C-03-5598 SC, 2004 WL 1918888 (N.D. Cal. Aug. 24, 2004) .......... 22

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .......... 5

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) .......... 5, 7, 15

*Palmer v. Stassinos*, 419 F. Supp. 2d 1151 (N.D. Cal. 2005) .......... 20

*Parker v. Learn the Skills Corp.*, 530 F. Supp. 2d 661 (D. Del. 2008) .......... 13

*Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640 (7th Cir. 1995) .......... 17

*Sacramento Suburban Fruit Lands Co. v. Melin*, 36 F.2d 907 (9th Cir. 1929) .......... 11

*Shoemaker v. Myers*, 52 Cal 3d 1 (1990) .......... 23

*Stachon v. United Consumers Club, Inc.*, 229 F.3d 673 (7th Cir. 2000) .......... 17

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) .......... 5, 6, 9

*Twinde v. Threshold Pharm. Inc.*, No. C 07-4972 CW, 2008 WL 2740457 (N.D. Cal. July 11, 2008) .......... 10

*United States v. Mitchell*, 744 F.2d 701 (9th Cir. 1984) .......... 14

*VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696 (6th Cir. 2000) .......... 16, 17

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .......... 8, 10, 11

*Wagner v. Magellan Health Servs., Inc.*, 125 F. Supp. 2d 302 (N.D. Ill. 2000) .......... 14

*Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168 (E.D. Cal. 2007),


GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

*aff'd Walker v. Geico Ins. Co.*, 558 F.3d 1025 (9th Cir. 2009) ........ 19, 20

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 49 Cal. Rptr. 2d 793 (Cal. Ct. App. 1996) ........ 22

*Whitson v. Bumbo*, No. C 07-05597 MHP, 2009 U.S. Dist. LEXIS 32282 (N.D. Cal. Apr. 15, 2009) ........ 9

*Zucco Partners, LLC v. Digimarc Corp.*, No. 06-35758, 552 F.3d 981, 2009 WL 57081 (9th Cir. 2009) ........ 13

**RULES AND REGULATIONS:**

12 C.F.R. §§ 33.44-33.45 ........ 20

12 C.F.R. §§ 34.44-34.47 ........ 20

12 C.F.R. § 34.47 ........ 20, 21, 25

Cal Code Regs. tit. 10, §§ 3721-3732 ........ 20, 21, 25

Fed. R. Civ. P. 9(b) ........ passim

Fed. R. Civ. P. 12(b)(6) ........ 4, 6

**STATUTES:**

18 U.S.C. § 1961(1)(B) ........ 7

18 U.S.C. § 1961(5) ........ 7

18 U.S.C. § 1962(c) ........ passim

18 U.S.C. § 1962(d) ........ passim

Cal. Bus. & Prof. Code § 17200 ........ 3

Cal. Bus. & Prof. Code § 17200 *et seq.* ........ 1

Cal. Bus. & Prof. Code §§ 17203-04 ........ 19

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on September 17, 2009 at 2:00 p.m., or as soon thereafter as counsel may be heard, defendant Wells Fargo Bank, N.A. ("Wells Fargo") will bring on for hearing before the Honorable Claudia Wilken, United States District Judge, in Courtroom 2, 4th Floor, at the United States Courthouse, 1301 Clay Street, Oakland, CA 94612, their Motion to Dismiss Plaintiffs' Class Action Complaint.

Wells Fargo requests dismissal of all Counts of the Class Action Complaint ("Complaint") for failure to state a claim it because there are no specific factual allegations relating to any acts or omissions by Wells Fargo that would entitle Plaintiffs to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-55 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Wells Fargo also requests dismissal of Count I (Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d)), Count 2 (California Business and Professions Code § 17200 ("UCL")) and Count 3 (Interference with Prospective Economic Advantage) for the additional and independent reasons that: (i) Plaintiffs' RICO claims do not sufficiently allege any predicate acts to support their claims; (ii) Plaintiffs allege a non-cognizable enterprise—the Wells Fargo Brokerage Enterprise—in support of their RICO claim; (iii) Plaintiffs have not demonstrated that any of the conduct of the alleged RICO enterprises was the proximate cause of their alleged harm; (iv) Plaintiffs lack standing to bring a UCL claim; (v) Plaintiffs' UCL claims under the "unlawful" prong of that statute fail because Plaintiffs' have not properly alleged any predicate unlawful act to support their claims; (vi) Plaintiffs' UCL claims under the "unfair" prong do not meet the *Cel-Tech* test set forth by the California Supreme Court; and (vii) Plaintiffs' claims for interference with prospective economic advantage do not identify any third-party with whom they had a future economically beneficial relationship or any independent wrong outside of the alleged interference.

## STATEMENT OF THE ISSUES TO BE DECIDED

Pursuant to Civil Local Rule 7-4(a)(3), Wells Fargo sets forth the following statement of issues to be decided:

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

1. Whether Plaintiffs' Complaint states a claim against Wells Fargo where there is no allegation that it engaged in the challenged conduct of placing an appraisal company on a "blacklist," and no allegation regarding Wells Fargo's conduct with respect to the appraisals at issue?

2. Whether Plaintiffs state a RICO claim where there is no allegation that Wells Fargo made any misrepresentation or engaged in any fraudulent conduct?

3. Whether Plaintiffs' RICO claim must be dismissed, because the alleged predicate acts of mail and wire fraud are not pled with the particularity, as required under Rule 9(b) of the Federal Rules of Civil Procedure?

4. Whether Plaintiffs' RICO claims should be dismissed because they do not allege that the purported RICO enterprises proximately caused them harm?

5. Whether the alleged associated-in-fact enterprise, the Wells Fargo Brokerage Enterprise, is properly pled?

6. Whether Plaintiffs lack standing to pursue their California Unfair Competition Law ("UCL") claim?

7. Whether Plaintiffs plead the requisite unlawful or unfair business practices necessary to state a UCL claim?

8. Whether Plaintiffs' claim for interference with prospective economic advantage can survive absent allegations of interference with Plaintiffs' business relationships with third parties, or allegations of an independent wrong apart from the alleged interference?

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In an expansive complaint spanning 130 paragraphs, Plaintiffs, two independent appraisal companies, allege that they were improperly removed from an approved appraiser list maintained by Valuation Information Technology, LLC, d/b/a Rels Valuation ("Rels"). Based upon these allegations, Plaintiffs purport to assert claims for violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c) and (d), and California's Unfair Competition

Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. (Count 2), as well as a claim for intentional interference with Plaintiffs' prospective economic advantage (Count 3).[1] All of these claims arise from Plaintiffs' theory—unsupported by factual allegations—that Wells Fargo and Rels engaged in a vast, nationwide conspiracy to "blacklist" honest appraisers.[2]

Despite the scurrilous nature of their accusations, Plaintiffs' Class Action Complaint ("Complaint") fails to allege any actionable conduct undertaken against them by Wells Fargo, or any specific factual allegation connecting Wells Fargo to their alleged removal from Rels' approved appraiser list. Given this, it is not surprising that Plaintiffs also fail to plead with particularity any predicate acts of mail and wire fraud necessary to support their RICO claims. Indeed, although Plaintiffs contend that Wells Fargo committed acts of mail and wire fraud, Plaintiffs have not pled with particularity a single instance of mail or wire fraud in connection with their own transaction, nor identified any actionable misrepresentations or omissions made to or about them by Wells Fargo. Moreover, as Plaintiffs cannot, as a matter of law, support their own claims with allegations about conduct directed to others, the confidential witness statements and generalized allegations about the mortgage market set forth in the Complaint do not save Plaintiffs' claims. Likewise, Plaintiffs' RICO claims do not plead that either of the alleged enterprises proximately caused them a cognizable injury, and, in any event, the alleged Wells Fargo Brokerage Enterprise is not cognizable under RICO. Accordingly, Plaintiffs RICO claims should be dismissed.

Plaintiffs' state law claims (Counts 2 and 3) against Wells Fargo must be dismissed for additional, independent reasons. Plaintiffs' UCL count does not properly pled a violation of

[1] Plaintiffs – out-of-state entities from Washington and Colorado (Compl. ¶¶ 12-13) – purport to state claims (Counts 2 (UCL) and 3 (interference with prospective economic advantage)) under California law. Wells Fargo denies that California law applies to the claims of these out-of-state Plaintiffs arising from their non-California dealings with a non-California company (Rels) about appraisals performed on non-California properties. Wells Fargo further denies that California law can apply to the claims of putative class members from outside the State. Accordingly, Wells Fargo's response to Plaintiffs' claims in this Motion is not a waiver of its rights to challenge the application of California's law at a later date, such rights being expressly reserved.

[2] Wells Fargo vigorously denies the existence of any such conspiracy.

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

another statute to support their "unlawful" claim, and Plaintiffs' allegations do not meet the *Cel-Tech* test for unfairness applicable to commercial entities. Plaintiffs' interference with prospective economic advantage claim also must be dismissed because Plaintiffs have not shown interference with a vested property interest, and have not identified an independent "wrong" sufficient to support the claim.

**FACTUAL ALLEGATIONS**[3]

Plaintiffs Sound Appraisal and Savage Appraisal Services, Inc. (collectively, "Plaintiffs") are both "in the business of providing real estate appraisals to mortgage brokers and mortgage lenders." Compl. ¶¶ 12-13. Plaintiffs allege that they previously received appraisal jobs from Rels. *Id.* ¶¶ 43, 52. Sound Appraisal alleges that, following an appraisal order in June 2007, Rels informed it that it "had been suspended and was no longer an approved appraiser for Rels Valuation." *Id.* ¶¶ 47-49. Savage Appraisal alleges that, in February 2009, Rels informed it that it "had been removed from their approved panel of appraisers." *Id.* ¶¶ 54-55. Plaintiffs allege that their removal from the approved panel denied them the opportunity to conduct future appraisals on Wells Fargo loans. *Id.* at ¶¶ 46, 54-55. Plaintiffs do not allege that Wells Fargo blacklisted them from performing appraisals for Wells Fargo mortgage loans, nor do they otherwise connect Wells Fargo to their claims. *Id.* ¶¶ 47-49, 54-55.[4]

**STANDARD**

A Complaint (or any cause of action alleged therein) must be dismissed when it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This standard is met where a Complaint fails to allege sufficient facts which, if true, would provide adequate grounds to entitle a Plaintiff to relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). A complaint

[3] Although Wells Fargo denies the truth of most all of what is alleged in the Complaint, this Motion assumes the facts pled to be true, as it must under the Federal Rules of Civil Procedure.

[4] In the event this matter proceeds beyond the pleadings stage (and it should not), Wells Fargo intends to demonstrate that Plaintiffs are not on any "blacklist" or unauthorized appraiser list maintained or created by Wells Fargo.

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

containing mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" does not state a claim. *Twombly*, 550 U.S. at 555. Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). Moreover, Plaintiffs cannot rely on allegations regarding putative class members to survive a motion to dismiss their individual claims. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Plaintiffs' RICO and UCL claims predicated upon alleged fraud also must meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Odom v. Microsoft Corp.*, 486 F.3d 541, 553-54 (9th Cir. 2007); *see also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) ("We have applied the particularity requirements of rule 9(b) to RICO claims"). Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). When pleading a civil RICO claim based on fraud, a complaint must, at a minimum, "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citations and quotations omitted). In addition, where, as here, the Complaint accuses more than one defendant of participating in an alleged fraudulent scheme, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together, but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citations and quotations omitted). Application of these pleading rules necessitates dismissal of Plaintiffs' claims.

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

## ARGUMENT

### I. WELLS FARGO BANK, N.A. SHOULD BE DISMISSED.

At the outset, Plaintiffs' claims against Wells Fargo should be dismissed because there are no specific allegations of any actionable conduct taken by Wells Fargo against them. While Plaintiffs allege generically that Defendants placed their name on a "suspension list" or "blacklist," the Complaint does not allege that Wells Fargo had any specific involvement with Plaintiffs or the three appraisals that Plaintiffs allegedly performed for Rels Valuation. Compl. ¶¶ 38, 44-45, 47-49, 52-55; *Swartz*, 476 F.3d at 764-65 (citations and quotations omitted). Nowhere in the Complaint do Plaintiffs allege that Wells Fargo placed them on a list or created or maintained such a list. Plaintiffs' contentions that there was a "Wells Fargo and Rels Valuation database" and that "Rels Valuation is a 'captive' puppet of Wells Fargo" do not save their claims as every factual allegation concerning the alleged list; the appraisals conducted by Plaintiffs; the placement of Plaintiffs on the alleged list; and the communications concerning that list and the appraisals are tied only to Plaintiffs' interactions with Rels, not Wells Fargo. Compl. ¶¶ 38-39, 43-49 (describing Dan Pearsall's interactions with Rels), 52-55 (describing Timothy Savage's interactions with Rels). The allegations concerning Rels' actions against Plaintiffs coupled only with the type of generalized allegations concerning Wells Fargo's and Rels' relationship described above amount to nothing more than speculation about the Defendants' business relationship—not facts concerning alleged conduct on Wells Fargo's part against Plaintiffs. *ITI Internet Servs., Inc. v. Solana Capital Partners, Inc.*, No. C05-2010Z, 2006 WL 1789029, at *8 (W.D. Wash. June 27, 2006) (holding that generalized allegations do not meet 9(b) requirements). Because Plaintiffs' conclusory and general allegations do not support any claim against Wells Fargo, it should be dismissed from this action. *Twombly*, 550 U.S. at 553-55 (mere "labels and conclusions" cannot survive a Rule 12(b)(6) motion).

### II. THE COMPLAINT DOES NOT STATE A RICO CLAIM.

Plaintiffs' RICO claims also should be dismissed for several adequate and independent

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

reasons.

### A. PLAINTIFFS FAIL TO ALLEGE A "PATTERN" OF "RACKETEERING ACTIVITY."

First, Plaintiffs' RICO claim should be dismissed because the Complaint does not properly allege a "pattern" of "racketeering activity." In order to state a civil RICO claim under Subsection 1962(c), one must allege a "pattern" of "racketeering activity" consisting of at least two predicate acts cognizable under RICO. 18 U.S.C. §§ 1961(5), 1962(c); *Clark v. Time Warner Cable*, 523 F.3d 1110, 1116 (9th Cir. 2008) ("one must allege a 'pattern' of racketeering activity, which requires at least two predicate acts") (citations omitted). RICO defines the term "racketeering activity" to include a wide-range of predicate acts, including "any act which is indictable under . . . section 1341 (relating to mail fraud), [or] section 1343 (relating to wire fraud)." 18 U.S.C. § 1961(1)(B). Plaintiffs, however, fail to properly allege any predicate act that could support their RICO claim.

#### 1. Plaintiffs Do Not Properly Allege A Predicate Act Of Mail Or Wire Fraud.

Plaintiffs contend that "Defendants' [alleged] pattern of racketeering likely involved thousands of separate instances" of mail and wire fraud.[5] Compl. ¶ 115. This mere recitation of RICO's elements satisfies neither *Twombly* nor the heightened pleading requirements of Fed. R. Civ. P. 9(b).

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). And, a RICO claim based on mail and wire fraud must be measured against this heightened pleading requirement, and must be supported by "particularized allegations" of the factual circumstances of the fraud itself. *Odom*, 486 F.3d at 554; *Edwards*, 356 F.3d at 1065-66 ("Rule 9(b)'s requirement that 'in all

[5] The elements of mail and wire fraud are "(1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Odom*, 486 F.3d at 554 (citations and quotations omitted). In addition, in order to adequately plead a RICO claim predicated on acts of mail or wire fraud, a plaintiff must show an injury to business or property that is legally cognizant under state law. *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005). As discussed in Parts III.A.1 and III.B *supra*, Plaintiffs have not done so here, rendering their RICO claims deficient.

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims.") (citation omitted). Specifically, Plaintiffs must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards*, 356 F.3d at 1066 (citations and quotations omitted); *In re Actimmune Mktg. Litig.*, No. C 08-02376-MHP, 2009 U.S. Dist. LEXIS 36133, at *26 (N.D. Cal. Apr. 28, 2009); *Hernandez v. Downey Savs. & Loan Ass'n*, No. C 08-05732 JF (PVT), 2009 U.S. Dist. LEXIS 24205, at *10 (N.D. Cal. Mar. 13, 2009).

Plaintiffs here fail to plead sufficient specific factual allegations to support any alleged mail or wire fraud by Wells Fargo, and thus this Court should not hesitate to dismiss Plaintiffs' RICO claim. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) ("When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim."); *see Mehmet v. PayPal, Inc.*, No. C-08-01961 RMW, 2009 U.S. Dist. LEXIS 29846, at *15 (N.D. Cal. Mar. 26, 2009); *see Hernandez*, 2009 U.S. Dist. LEXIS 24205, at *10-11.

i. Plaintiffs Do Not Allege Any Misrepresentations or Fraudulent Conduct by Wells Fargo.

Plaintiffs generally allege that Wells Fargo and Rels "suspended or removed [appraisers] from the approved appraiser list" and that they attempted to "pressure appraisers to change the values in their appraisal reports." Compl. ¶ 108. But, as noted, Plaintiffs do not allege that Wells Fargo removed them from any approved appraiser list. Nor do Plaintiffs point to any specific misrepresentations, nevermind misrepresentations made by Wells Fargo. At most, Plaintiffs' claims arise from and challenge purported conduct by Rels. Compl. ¶¶ 40-55.

In pleading fraud, a plaintiff must identify the misrepresentation and then "set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (citation and quotations omitted); *Marks v. Ocwen Loan Servicing.*, No. C 07-2133 SI, 2009 U.S. Dist. LEXIS 35251, at *11 (N.D. Cal. Apr. 10, 2009); *Mehmet*, 2009 U.S. Dist. LEXIS 29846, at *6. Yet neither of the acts described in their general allegations is a misrepresentation in and of itself, nor

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

are those alleged acts coupled with statements of misrepresentation. Without identifying any specific instances of misrepresentation, Plaintiffs cannot show a predicate act of mail or wire fraud to support their RICO claim and do not meet the requirements of Rule 9(b) whatsoever. *Edwards*, 356 F.3d at 1066.

Likewise, when claims based in fraud are brought against more than one defendant, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764-65 (citations and quotations omitted); *see Whitson v. Bumbo*, No. C 07-05597 MHP, 2009 U.S. Dist. LEXIS 32282, at *21 (N.D. Cal. Apr. 15, 2009). Plaintiffs here do not identify what, if any, specific role Wells Fargo purportedly played in the alleged fraudulent scheme as to Plaintiffs, let alone identify the time, place, and specific content of any communications made by Wells Fargo to or about them. Compl. ¶ 108. For example, while Plaintiffs allege that the purported fraudulent scheme "involved the use of telephone and email communications from Wells Fargo and [Rels] to Class members, including Plaintiffs, which were attempts to pressure appraisers to change the values in their appraisal reports," they make no allegation about any such communications to them by Wells Fargo. *Id.* Nor do they allege even one fraudulent statement by Wells Fargo *or* Rels in connection to support their conclusory allegations. *Id.* Failing to specifically describe the alleged conduct on the part of each defendant is alone enough to find that Plaintiffs do not satisfy Rule 9(b). *See Lewis v. Sporck*, 612 F. Supp. 1316, 1325 (N.D. Cal. 1985).

Even where Plaintiffs attempt to plead specific conduct, their allegations do not establish any predicate acts of mail or wire fraud committed by Wells Fargo. *See* Compl. ¶¶ 43-48, 52-55, 110-12. For example, Sound Appraisal contends that, in June 2007, it "received a request from Wells Fargo through Rels Valuation to conduct an appraisal of a home in Enumclaw, Washington." *Id.* ¶ 43. It goes on to contend that, following completion of the appraisal, "*Rels Valuation* contacted Mr. Pearsall and asked that he alter the Uniform Residential Appraisal

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

Report;" (*id.* ¶¶ 44, 110) that "*Rels Valuation* lambasted Mr. Pearsall for his adherence to USPAP and his refusal to alter the report;" that "*Rels Valuation's area manager* criticized Mr. Pearsall and told him that he 'took USPAP too seriously' and that he was going to 'kill the deal;'" (*id.* ¶¶ 45, 110) that "[a]fter this incident Sound Appraisal no longer received appraisal requests *from Rels Valuation*;" (*id.* ¶ 46) and that when it inquired about the lack of referrals *Rels' Area Manager* "informed Mr. Pearsall that he had been suspended and was no longer an approved appraiser for Rels Valuation."[6] *Id.* ¶ 47 (emphasis added). Sound Appraisal later alleges that, *Rels' Area Manager* "called Mr. Pearsall on the telephone [and] told [him] that he 'took USPAP to [sic] seriously and gave [him] an ultimatum: either alter the report or be suspended from *Rels Valuation [sic] approved appraiser list*." *Id.* ¶ 110 (emphasis added).

None of these allegations pleads a single instance of mail or wire fraud, or other actionable conduct by Wells Fargo. To the contrary, they allege only non-fraudulent conduct by Rels. *Twinde v. Threshold Pharm. Inc.*, No. C 07-4972 CW, 2008 WL 2740457, at *11 (N.D. Cal. July 11, 2008) ("statement of opinion cannot form the basis for a fraud claim"); *Kinghorn v. Citibank, N.A.*, No. C 97-3111 FMS, 1999 WL 30534, at *6 (N.D. Cal. Jan. 20, 1999) (a true statement "cannot amount to a misrepresentation"). At best, Sound Appraisal's allegations truthfully describe a purported interaction between *Rels* and Don Pearsall that allegedly resulted in Rels informing "Mr. Pearsall that he had been suspended and was no longer an approved appraiser for Rels Valuation." Compl. ¶ 47. This is not fraud. Sound Appraisal does not describe what it was asked to change in the appraisal, why it disagreed with the request, or how such a request allegedly violated the USPAP, much less how any of these communications were fraudulent. Moreover, Sound Appraisal's allegations do not implicate Wells Fargo in any way. Sound Appraisal cannot state a fraud-based claim against Wells Fargo without describing its role in the alleged fraud or the fraudulent conduct itself with particularity. *Vess*, 317 F.3d at 1106

---

[6] Sound Appraisal also contends that "[o]n April 8, 2009, Don Pearsall . . . received a work order request via telephone from *Rels Valuation* that confirmed the existence of the blacklist" and describes that *Rels employee* as stating "I'm sorry. I wasn't supposed to contact you." *Id.* ¶ 48 (emphasis added).

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (citation omitted).

Savage Appraisal's allegations fare no better. Savage Appraisal alleges that, in January 2009, it was assigned two appraisals by Rels and "[a]fter the appraisals were delivered, *Rels Valuation* sent emails, pressuring Mr. Savage to increase the value of each appraisal as the homeowners were not happy with his *opinion* of the value." Compl. ¶ 52 (emphasis added). Savage Appraisal further alleges that, "[o]n January 15, 2009 . . . a 'Collateral Compliance Reviewer' *for Rels Valuation* sent Mr. Savage an email purporting to provide information to 'support an increased valuation' for property at 993 Lionsridge Loop 322, Vail, Colorado." *Id.* ¶ 53 (emphasis added). It then contends that "[o]n January 14, 2009 . . . a 'Collateral Compliance Reviewer' *for Rels Valuation* sent an email to Mr. Savage purporting to provide information 'to support an increased value' of property at 945 Sandstone Road, Vail, Colorado" and that "[a]fter a lengthy letter of explanation, Mr. Savage refused to increase his original *opinion* of the value for the two homes at issue. *Id.* (emphasis added). Finally, Savage Appraisal alleges that "[t]he next time Mr. Savage heard *from Rels Valuation*, via a letter dated February 5, 2009, was to inform him that he had been removed from their approved panel of appraisers." *Id.* ¶ 54 (emphasis added); *see also* Compl. ¶ 112.

These allegations, like those of Sound Appraisal, cannot support a claim of mail or wire fraud by Wells Fargo. *Vess*, 317 F.3d at 1106; Compl. ¶¶ 50-55, 112. Further, Rels' alleged statements are not actionable in fraud because, as Savage Appraisal concedes in its own pleading, the alleged communications concern matters of opinion as to value—which are not instances of actionable fraud. Compl. ¶¶ 52-53. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004) ("expressions of opinion [are] not actionable as fraud even if they are false."). Indeed, it is well established "that the question of land value 'is generally a matter of opinion only.'" *Fifty Assocs. v. Prudential Ins. Co. of America*, 450 F.2d 1007, 1010-11 (9th Cir. 1971) (quoting *Sacramento Suburban Fruit Lands Co. v. Melin*, 36 F.2d 907, 910 (9th Cir. 1929)). Put simply, to the extent that an appraisal is a matter of opinion, Savage Appraisal's allegation concerning

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

differences in opinion about appraisal valuations cannot form the basis of a predicate act of fraud to support a RICO claim.

Plaintiffs concede their failure to comply with Rule 9(b) by alleging that they should be afforded a less restrictive pleading standard because "[m]any of the precise dates of Defendants' uses of the U.S. mails and interstate wire facilities (and corresponding RICO predicate acts of mail and wire fraud) have been hidden and cannot be alleged without access to these Defendants' books and records." Compl. ¶ 107. But Rule 9(b)'s heightened pleading standard must be applied here, because Plaintiffs allege that telephone and email communications were sent to them and, therefore, Plaintiffs should be in possession of the facts needed to support their claims. Compl. ¶ 110; *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (holding that a plaintiff will be permitted to rely on an inference of fraud only when he cannot be expected to have personal knowledge of the facts underlying his claims) (citations omitted). Despite being in possession of all relevant facts, even the telephone conversations and emails that Plaintiffs allegedly "describe in detail," they still fail to meet Rule 9(b)'s pleading requirements. Compl. ¶¶ 107, 110, 112. That failure should not be excused. *See In re Calpine Corp. ERISA Litig.*, No. C 03-1685 SBA, 2005 U.S. Dist. LEXIS 34452, at *24 (N.D. Cal. Dec. 5, 2005) (Plaintiff not entitled to exception when he was the "*recipient* of the allegedly misleading statements" and therefore should be able to identify the particular statements that were misleading, the medium used to communicate the statements, when they were made and by whom, and how they were misleading).

ii. Confidential Witness Statements Cannot Support Fraud.

Plaintiffs attempt to bolster their otherwise deficient allegations of mail and wire fraud by pointing to alleged statements by "Confidential Witnesses." But the Complaint draws no connection between Plaintiffs' own claims and these "Confidential Witnesses" and fails to set forth any alleged fraudulent statements with Rule 9(b) specificity. Compl. ¶¶ 57-65. Plaintiffs cannot rely on the "Confidential Witness" statements as grounds to sustain their own claims because a plaintiff cannot state a claim based on conduct applicable to others. *Lozano v. AT&T Wireless Servs. Inc.*, 504 F.3d 718, 733 (9th Cir. 2007). Wells Fargo's research has not revealed

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

any reported case where a "Confidential Witness" statement was used to support liability against a defendant for a civil violation of RICO. While confidential witnesses are sometimes used in pleading alleged violations of securities law, it is well-established that such statements must be described with "sufficient particularity to establish their reliability and personal knowledge." *Zucco Partners, LLC v. Digimarc Corp.*, No. 06-35758, 552 F.3d 981, 985, 2009 WL 57081 (9th Cir. 2009) (citation omitted); *see In re Daou Sys. Inc.*, 411 F.3d 1006, 1015-16 (9th Cir. 2005). The Complaint is bereft of any allegations that could establish the reliability or personal knowledge of these alleged "Confidential Witnesses," and so these allegations cannot support Plaintiffs' claims.

In any event, unsurprisingly, the "Confidential Witness" statements do not allege any particularized facts that would establish a predicate act of mail or wire fraud by Wells Fargo. *In re MIPS Techs., Inc.*, No. C-06-06699, 2008 WL 3823726, at *6 (N.D. Cal. Aug. 13. 2008) (dismissing confidential witness statements for lack of specificity when "the pleading rules require even more, i.e., particularized facts, these witness statements are too vague and general to be sufficient"). Without pleading the who, what, when, where, and why, a claim grounded in mail or wire fraud cannot survive. *See Edwards*, 356 F.3d at 1066.

**2. Plaintiffs' Other Allegations Do Not Constitute RICO Predicate Acts.**

A RICO predicate act must be an indictable offense. Even if, as Plaintiffs contend, they were somehow placed on a "suspension list" or "blacklist" and "brokers placing loans with Wells Fargo refuse to hire Plaintiffs and the Class members to prepare appraisals," that is not a predicate act under RICO and thus cannot support a RICO claim against Wells Fargo. Compl. ¶¶ 38, 102. By their allegations, Plaintiffs primarily challenge a purported Rels's decision to no longer work with them and speculate (without any factual support) that this may affect their business with mortgage brokers who may deem such a decision to reflect negatively on Plaintiffs' appraisal work. Yet, neither "blacklisting" nor alleged derogatory statements about a company's work are a predicate act under RICO and should not be considered as such. *See Parker v. Learn the Skills Corp.*, 530 F. Supp. 2d 661, 678 (D. Del. 2008) (dismissing RICO claim alleging that as a result of

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

Defendant's derogatory statements about Plaintiff, it "lost revenue, lost goodwill, lost investment value, and lost media exposure"); *Marks v. City of Seattle*, No. C03-1701, 2003 WL 23024522, at *1, *6 (W.D. Wash. Oct. 16, 2003) (finding that alleged acts of defamation or false light are not predicate acts within § 1961(1) of RICO); *Wagner v. Magellan Health Servs., Inc.*, 125 F. Supp. 2d 302, 307 (N.D. Ill. 2000) (dismissing claim by physician that HMO violated RICO by blacklisting him because there was no evidence of an attempt to gain something of monetary value or any false statements).

Plaintiffs' allegations that Defendants transmitted "thousands of communications" through telephone, email and the U.S. mail also cannot support a RICO claim. Compl. ¶ 108. Plaintiffs fail to allege how these transmissions furthered a fraudulent scheme, and therefore, the transmissions standing alone are insufficient to constitute a RICO predicate act. *United States v. Mitchell*, 744 F.2d 701, 703 (9th Cir. 1984) (mailings "must be made or caused to be made for the purpose of executing the scheme").

Having failed to establish the requisite predicate acts for a pattern of racketeering activity, Plaintiffs' RICO claim must be dismissed. *Clark*, 523 F.3d at 1116. Moreover, to the extent Plaintiffs attempt to state a RICO claim under Subsection 1962(d), it is entirely predicated upon an alleged violation of Subsection 1962(c). Because the Complaint fails to state a claim for violation of Subsection 1962(c), Plaintiffs' 1962(d) claim also must be dismissed. *Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy" under Subsection 1962(d)).[7]

[7] Plaintiffs fail to make any specific allegations in connection with the alleged violation of Subsection 1962(d). Plaintiffs' sole allegation concerning Subsection 1962(d) states only: "At all relevant times, in violation of 18 U.S.C. § 1962(c), the Defendants conducted the affairs of certain association-in-fact enterprises identified herein, the affairs of which affected interstate commerce through a pattern of racketeering activity, and engaged in a conspiracy in violation of 1962(d)." Compl. ¶ 87. Such bare recitation of the elements of a RICO claim under Subsection 1962(d) cannot support Plaintiffs' claim. *Twombly*, 550 U.S. at 555. Thus, Defendants do not treat Plaintiffs' reference to Subsection 1962(d) as a separate cause of action.

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

### B. PLAINTIFFS FAIL TO ALLEGE A COGNIZABLE RICO ENTERPRISE THAT PROXIMATELY CAUSED THEM HARM.

Second, the RICO claim also must be dismissed because the alleged Wells Fargo Brokerage Enterprise is not a valid RICO enterprise, and Plaintiffs fail to plead how that enterprise or the alleged alternate Wells Fargo Enterprise caused them any harm.

#### 1. The "Wells Fargo Brokerage Enterprise" Is Not Cognizable.

The alleged "Wells Fargo Brokerage Enterprise" (Compl. ¶¶ 88-93) purportedly consists of "(1) Wells Fargo, including its Rels Valuation and other loan closing service affiliates, and (2) mortgage brokers not named as defendants herein who have contracts with Wells Fargo pursuant to which they sell, arrange, promote, or otherwise assist Wells Fargo in directing borrowers into loans issued by Wells Fargo" is legally invalid for two separate reasons. Compl. ¶ 88. First, Plaintiffs plead no facts that would establish that the many thousands of brokers across the country—many of which both originate loans with Wells Fargo's competitors and compete with one another themselves—worked together toward a common purpose. *Odom*, 486 F.3d at 552-53 (associated-in-fact RICO enterprise requires (1) a "common purpose," (2) an "ongoing organization," and (3) a "continuing unit"). Indeed, although the specifics of the alleged fraudulent acts are never pled, the clear implication of Plaintiffs' allegations is that misrepresentations about their qualifications were directed to brokers, not coordinated with them. There simply are no plausible allegations that brokers conspired with Wells Fargo toward a common purpose. To the contrary, under the alleged scheme, each broker throughout the country is alleged to have done business independently with Wells Fargo. Courts have repeatedly characterized this type of allegation as pleading only "[a] series of discontinuous independent frauds" that do not add up to a RICO enterprise. *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007).

What Plaintiffs purport to plead is a classic "hub-and-spoke" conspiracy, with Wells Fargo as the hub and each broker as a separate spoke. But, numerous courts have held that, without a "rim" linking the spokes—that is, here, without facts establishing connections between the brokers themselves—"[s]uch a scheme is not one true common law conspiracy nor is it a RICO

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

enterprise." *New York Auto. Ins. Plan v. All Purpose Agency & Brokerage, Inc.*, No. 97 Civ. 3164 (KTD), 1998 WL 695869, at *5 (S.D.N.Y. Oct. 6, 1998); *see also VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 700 (6th Cir. 2000); *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 183 (D. Mass. 2003); *Cedar Swamp Holdings*, 487 F. Supp. 2d at 450; *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994). It is not enough to allege that each "spoke" involves the commission of similar acts—there must be factual allegations establishing that the participants on the spokes share a common purpose and work together to achieve that purpose. *See First Nationwide Bank*, 820 F. Supp. at 98.

Here, the Complaint merely makes the conclusory assertions that this alleged enterprise is "ongoing and continuing business organizations consisting of both corporations and individuals that are and have been associated for the common or shared purposes" and that the "Wells Fargo Brokerage Enterprise has an ascertainable structure separate and apart from the pattern of racketeering in which the Defendants engage." Compl. ¶¶ 88, 93. Courts have repeatedly held that these kinds of conclusory assertions, without facts showing a relationship and shared efforts among the "spokes," are insufficient to withstand a motion to dismiss. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, Nos. 04-5184 (GEB), 05-1079 (GEB), 2007 U.S. Dist. LEXIS 73220, at *118 (D.N.J. Sept. 28, 2007) ("in order to draw a structure cognizable as a RICO enterprise, Plaintiffs have to assert actual facts drawing the 'rim' interconnecting Insurer-Defendants, instead of merely stating Plaintiffs' conclusion that Insurer-Defendants must have been interconnected"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d at 184. This is especially true following *Twombly*, which rejected the same kind of conclusory allegations about an alleged conspiracy and admonished litigants to plead sufficient facts to make a conspiracy plausible, rather than mere "labels and conclusions." 550 U.S. at 553-57. At a minimum, it is incumbent on Plaintiffs to explain how such a conspiracy would be plausible when the unnamed mortgage brokers undoubtedly compete with each other and originate loans for Wells Fargo's competitors. Indeed, where, as here, the enterprise theory consists of "a group of commercial third-party

entities *apparently unrelated to each other* who contract on a regular basis with some or all of the Defendants…[p]laintiffs have not pled a sufficient association between these third-party entities for the purposes of a RICO enterprise." *In re Managed Care Litig.*, 135 F. Supp. 2d 1253, 1262 (S.D. Fla. 2001) (emphasis in original).

Second, the "Wells Fargo Brokerage Enterprise," as pled, is too amorphous to constitute a valid RICO enterprise. The Complaint does not identify a single mortgage broker, much less explain how the legions of mortgage brokers across the country who compete with one another worked together to effect the alleged scheme, or how the "mortgage brokers not named as defendants herein who have contracts with Wells Fargo" are not completely independent businesses. Compl. ¶ 88. The Complaint merely lumps together, in a single undifferentiated mass, all mortgage brokers, nationwide, who contracted with Wells Fargo at any time. Compl. ¶¶ 88-93. Courts have consistently held that "[s]uch a nebulous, open-ended description of the enterprise does not sufficiently identify [a RICO enterprise]" for purposes of Rule 8. *See Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995); *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1091 (N.D. Cal. 2006); *accord Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 (7th Cir. 2000). The Sixth Circuit, in *VanDenBroeck*, for example, rejected a strikingly similar claim that a mortgage lender and every secondary market mortgage investor had formed a broad RICO enterprise. *See* 210 F.3d at 700. In that case, plaintiffs alleged that the defendant mortgage company's relationships with numerous unnamed secondary market investors, to which it sold mortgage loans, constituted a RICO enterprise. The Sixth Circuit, in affirming the dismissal of plaintiff's RICO enterprise allegations, stated that "[t]here is no allegation that there were a discreet number of secondary lenders that were used, which means that this conspiracy could have transpired with any lender in the secondary lending market." *Id.* Accordingly, the court held that "the enterprise alleged to exist in this case is too unstable and fluid an entity to constitute a RICO enterprise." *Id.* Plaintiffs' alleged "Wells Fargo Brokerage Enterprise" is fatally defective for the same reasons.

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

**2. Plaintiffs Do Not Allege That They Were Proximately Harmed By The Associated-In-Fact Enterprises.**

Plaintiffs' RICO claims also cannot withstand scrutiny because they do not tie their allegations concerning the associated-in-fact enterprises to any alleged harm suffered by them. It is well-established that civil liability under Section 1964(c) of RICO requires a showing of harm proximately caused by the alleged enterprise or conspiracy. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460-61 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to plaintiff's injuries."); *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 274 (1992) ("Allowing suits by those injured only indirectly would open the door to massive and complex damages litigation which would not only burden the courts, but would also undermine the effectiveness of treble-damages suits") (internal citations, quotations and punctuation omitted).

Although Plaintiffs attempt to plead the existence of the "Wells Fargo Brokerage Enterprise," Plaintiffs are silent as to whether such an enterprise caused them any harm. *See* Compl. ¶¶ 88-93. Indeed, neither Sound Appraisal nor Savage Appraisal allege that they performed any appraisals for brokered loans or allege that they had any interactions with brokers in any manner. Compl. ¶¶ 43 (alleging Sound Appraisal received an appraisal order from Rels), 52 (alleging that Savage Appraisal received two appraisal assignments from Rels). As the sole damage that Plaintiffs allege with specificity in the Complaint is a loss of business from Rels, Plaintiffs plead no harm proximately caused by conduct of the alleged Wells Fargo Brokerage Enterprise. Compl. ¶¶ 46 ("In 2008, Sound Appraisal's income from Rels Valuation was $0"), 55 (alleging "[Mr. Savage] has and will continue to lose income as a direct result of being blacklisted.").

Plaintiffs' allegations of harm proximately caused by the purported Wells Fargo Enterprise are similarly deficient. Plaintiffs allege only that "[t]he impacts of this conduct are still in place, *i.e.*., Plaintiffs and the Class members are still suspended/blacklisted and consequently, brokers placing loans with Wells Fargo refuse to hire Plaintiffs and the Class members to prepare appraisals." Compl. ¶ 102. Yet, Plaintiffs do not point to a single broker who has refused to use

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

their services as a result of being allegedly placed on a suspension list. Such a conclusory allegation, without more, does not show how the alleged improper acts of the enterprise led to any concrete harm to Plaintiffs. *Anza*, 547 U.S. at 460-61; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiffs' RICO allegations should be dismissed.

## III. PLAINTIFFS' STATE LAW CLAIMS ALSO FAIL.

While Wells Fargo addresses its defense to this claim (and Plaintiffs' claim in Count 3) under California law, Wells Fargo does not believe or concede that California law should apply to any of Plaintiffs' claims, and its response to those claims in this motion is not a waiver to its right to challenge the application of California's law at a later date, such rights being expressly reserved.

### A. PLAINTIFFS LACK STANDING TO BRING THE UCL CLAIM.

Plaintiffs do not have standing to bring a UCL claim because they have not "suffered injury in fact" and "lost money or property" such that they can seek an injunction against Wells Fargo. *See* Compl. ¶ 125 (limiting UCL relief sought to injunction against allegedly wrongful conduct); Cal. Bus. & Prof. Code §§ 17203-04; *In re Tobacco II Cases*, No. S1473545, --- Cal.Rptr.3d ---, 2009 WL 1362556, at *1, *15-16 (Cal. May 18, 2009); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (Cal. 2003) ("under the UCL, prevailing plaintiffs are generally limited to injunctive relief and restitution") (citations and quotations omitted). Under Section 17203, "[a]ny person may pursue representative claims or relief on behalf of others *only* if the claimant meets the standing requirements of Section 17204." Cal. Bus. & Prof. Code § 17203 (emphasis added). Moreover, any monetary recovery under the UCL is limited to restitution—a remedy limited to the return of property to "persons who had an ownership interest in the property." *Korea Supply Co.*, 29 Cal. 4th at 1149. At best, Plaintiffs allege here that they have lost business opportunities, but "[c]ompensation for a lost business opportunity is a measure of damages and not restitution to alleged victims." *Id.* at 1151 (citation omitted). They do not allege, nor can they, that Wells Fargo (or Rels) took any money or property from them in which they had a vested ownership interest. *See* Compl. ¶ 46, 55; *Walker v.USAA Cas. Ins. Co.*, 474 F.

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

Supp. 2d 1168, 1172 (E.D. Cal. 2007) (UCL standing requires that a plaintiffs show "prior possession" or a "vested legal interest" in the money or property allegedly lost), *aff'd by Walker v. GEICO Gen. Ins. Co.*, 558 F.3d 1025 (9th Cir. 2009). As such, Plaintiffs have not met the standing requirements to bring a claim under the UCL for injunctive relief or otherwise. *See Walker*, 558 F.3d at 1027; *Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 90 Cal. Rptr. 3d 455, 472 (Cal. Ct. App. 2009) (finding no right to injunctive relief under UCL absent a showing of losses that would permit restitution); *see also Palmer v. Stassinos*, 419 F. Supp. 2d 1151, 1154 (N.D. Cal. 2005) ("in order to sue for injunctive relief under California's unfair business practices laws, a party must have 'suffered injury in fact and [have] lost money or property as a result of such unfair competition.'").

**B. THE ALLEGATIONS DO NOT OTHERWISE SUPPORT A UCL CLAIM.**

Plaintiffs' UCL claim is deficient in other ways as well. Plaintiffs make only conclusory allegations that "Defendants violated the 'unfair' and 'unlawful' prongs of the UCL by engaging in the conduct set forth above, because the State of California has explicitly adopted the USPAP standards." Compl. ¶ 123.

To state a claim under the "unlawful" prong of the California UCL, Plaintiffs must properly plead that another statute was violated. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003). Here, Plaintiffs allege that Defendants have "(a) violated 18 U.S.C. § 1962(c) by conducting the affairs of certain association-in-fact enterprises identified herein, the affairs of which affected interstate commerce through a pattern of racketeering activity, and engaged in a conspiracy in violation of 18 U.S.C. § 1962(d)" and "(b) violated 12 C.F.R. §§ 33.44-33.45 by having appraisals prepared in violation of USPAP." Compl. ¶ 122. No UCL "unlawfulness" claim predicated upon an alleged violation of RICO can lie here because, as detailed above, Plaintiffs have not properly pled a RICO violation. *See* Section II. And, Plaintiffs' further attempt to predicate their UCL claim based on Wells Fargo's alleged violation of the USPAP, purportedly incorporated into federal and California state laws, fails at its inception. *Id.* at ¶ 122; 12 C.F.R. §§ 34.44-34.47; Cal Code Regs. tit. 10, §§ 3721-3732. This is

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

because, as discussed in detail above, Plaintiffs do not allege any conduct as to them by Wells Fargo, much less any conduct by Wells Fargo allegedly in violation of the USPAP. *Iqbal*, 129 S. Ct. at 1950 (finding that to survive a motion to dismiss a claim "must be supported by factual allegations"). Moreover, there is also no private right of action under the USPAP that would support a predicate unlawful act under the UCL. 12 C.F.R. § 34.47; Cal. Code Regs. tit. 10, §§ 3721-3732.

Plaintiffs' allegations of "unfair" conduct cannot sustain their UCL claim either because they do not meet the stringent test laid out in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999). *Cel-Tech* sets the standard for unfairness where, as here, the parties are commercial entities. And, under *Cel-Tech*, "unlawful conduct" is limited to:

> conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

*Id.* at 187. The Complaint is devoid of allegations to meet this test. Plaintiffs point to no conduct by Wells Fargo that threatens to violate antitrust law, violates the spirit of antitrust law, and/or threatens competitors. Rather, they allege only that Wells Fargo's purported conduct was unfair. That is not enough to state a claim under *Cel-Tech*.

Even setting this issue aside, Plaintiffs' UCL unfairness claim also fails for want of allegations of conduct by Wells Fargo that was either "unfair, or was likely to deceive the public." *Loe v. State Farm Ins. Cos.*, Nos. 96-55553, 96-55842, 164 F.3d 630, 1998 WL 690923, at *1 (9th Cir. Sept. 25, 1998). Aside from the conclusory statement that Defendants' conduct was unfair, Plaintiffs have not demonstrated how any decision to place them on a "suspension list" was unfair or how Rels's purported removal of them from Rels' "approved panel of appraisers" was unfair or could have deceived the public. Compl. ¶ 124 (stating that conduct only affected the alleged excluded appraisers).

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

### C. PLAINTIFFS DO NOT STATE A CLAIM FOR INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE.

Finally, the Complaint fails to state a claim for intentional interference with prospective economic advantage. Plaintiffs seek to bring this claim under California law and contend that "Defendants knew" about its "relationships with mortgage brokers and mortgage lenders" and "successfully engaged in the conduct alleged in this Complaint for the purpose of disrupting those relationships." Compl. ¶ 129. To establish tortious interference under California law, a plaintiff must prove: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Korea Supply* Co., 29 Cal. 4th at 1153. Here, Plaintiffs do not allege even the most basic facts necessary to satisfy these elements as to Wells Fargo. *Nu Science Corp. v. Efasteam.com*, No. C-03-5598 SC, 2004 WL 1918888, at *3 (N.D. Cal. Aug. 24, 2004) (holding that "conclusory language that merely repeats the elements of the tort . . . must be dismissed").

Plaintiffs fail to demonstrate the existence of a vested property interest or future economically beneficial relationship. Plaintiffs allege that "Plaintiffs and all Class members have economic relationships with mortgage brokers and mortgage lenders." Compl. ¶ 129. This vague and general assertion is insufficient to establish a protected property interest. *Certain Underwriters at Lloyd's, London v. Real Estate Prof'ls Ins. Co.*, No. CV-06-4783 CAS (JWJx), 2007 WL 4249078, at *8 (C.D. Cal. Nov. 26, 2007) (finding plaintiff's alleged relationships with "the real estate, mortgage and/or home industry" insufficient to establish a future economic benefit); *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 49 Cal. Rptr. 2d 793, 806-07 (Cal. Ct. App. 1996) (finding interference with the market to be insufficient to support a claim; rather, plaintiff needed to show an interference with an identifiable buyer). Plaintiffs plead no facts to establish Wells Fargo's "awareness" of their alleged relationships with other mortgage brokers and mortgage lenders, and so cannot support this claim. Plaintiffs' vague assertion of relationships

with unnamed third parties[8] cannot establish Wells Fargo's knowledge of those alleged relationships. *Bomanite Corp. v. Cathay Pigments (USA), Inc.*, No. 104CV05333OWWSMS, 2005 WL 1661899, at *13 (E.D. Cal. July 14, 2005) (dismissing Plaintiff's claim for lack of facts establishing defendant's knowledge of alleged relationships).

Furthermore, Plaintiffs also fail to demonstrate that their business expectancies of "preparing appraisals on real estate transactions" (Compl. ¶ 130) were reasonably certain to occur, as Plaintiffs have not alleged which specific mortgage brokers they could have done business with, or any other facts supporting the likelihood of them obtaining appraisal business with any third parties. *Computer Scis. Corp. v. Computer Assocs. Int'l, Inc.*, Nos. CV98-1374-WMB SHX, CV 98-1440-WMB SHX, 1999 WL 675446, at *23 (C.D. Cal. Aug. 12, 1999) ("[C]ourts require a plaintiff to demonstrate with reasonable certainty that, absent defendant's interference, a formal business relationship would have been consummated."); *Kruse v. Bank of Am.*, 248 Cal. Rptr. 217, 234 (Cal. Ct. App. 1988) (requiring a showing of interference with plaintiff's business relationship with a third party). Plaintiffs allege that they "have lost a substantial amount of business . . . on real estate transactions where Wells Fargo is the lender or potential buyer of the contemplated loan." Compl. ¶ 130. Wells Fargo cannot be both a party to the alleged lost economic relationship and the party alleged to have interfered with that relationship. *Kasparian v. County of L.A.*, 45 Cal Rptr. 2d 90, 100 (Cal. Ct. App. 1995) (finding no claim for "interference with prospective economic advantage against a party to the relationship from which the plaintiff's anticipated economic advantage would arise."); *Kruse*, 248 Cal. Rptr. at 234 ("While wrongful interference with one's *own* business may arguably constitute a breach of contract, it cannot serve as the basis of the claimed tort liability."); *Shoemaker v. Myers*, 52 Cal 3d 1, 24 (1990) (finding no claim when "plaintiff's pleading has identified no 'prospective economic advantage' other than the continuation of his employment relationship."). Indeed, Sound Appraisal's allegations concern only its business with Defendants, alleging that "25-35 % of [its] business came from Wells Fargo

---

[8] Compl. ¶¶ 88 (alleging that "mortgage brokers not named as defendants herein" were part of the Wells Fargo Brokerage Enterprise), 129 (alleging that Plaintiffs and all putative class members have economic relationships with "mortgage brokers and mortgage lenders").



GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

and Rels Valuation" and that its 2006 income from Rel Valuation was $33,395 while its 2008 income from Rels Valuation was $0. Compl. ¶ 46. Savage Appraisal does not even attempt to set forth its alleged business losses as a result of being "removed from [Rels Valuation's] approved panel of appraisers" or identify any third-parties that have ceased to conduct business with it. Compl. ¶¶ 54-55 (alleging only that "[Savage Appraisal] has and will continue to lose income as a direct result of being blacklisted"). As neither Plaintiff has identified any third party relationship that Wells Fargo allegedly interfered with, the claim for interference with prospective economic advantage fails as a matter of law. *Kruse*, 248 Cal. Rptr. at 234.

Finally, Plaintiffs have not sufficiently pled an "independent wrong," aside from the act of interference itself, that is required to state a claim for interference with prospective economic advantage. *Korea Supply Co.*, 29 Cal. 4th at 1158; *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392-93 (1995). An independently wrongful act is "unlawful . . . [meaning] proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co.*, 29 Cal. 4th at 1159. As demonstrated above (Parts II and III A *supra*), Plaintiffs' claims under both RICO and the UCL are pled inadequately, and therefore, cannot serve the independent "wrong" necessary to support a claim for intentional interference with prospective economic advantage. *See Aho Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-cv-04133-SBA, 2008 WL 4830708, at *2-3 (N.D. Cal. Nov. 6, 2008) (dismissing claim for interference where the underlying UCL claims fail). Further, to the extent that Plaintiffs attempt to point to acts by Defendants alleged to violate certain appraisal standards under the USPAP (Compl. ¶¶ 24, 35, 44, 56, 123), a violation of industry standards cannot be used to establish an "independent wrong" to state a claim for intentional interference with a prospective economic advantage. *CRST Van Expedited, Inc. v. Werner Enters.*, 479 F.3d 1099, 1109 (9th Cir. 2007) (ruling "violation of trade rules [is] not independently actionable conduct and therefore, not an independently wrongful act."). Moreover, the California statute that Plaintiffs point to as incorporating the USPAP does not provide a private right of action for violation of those standards, and so cannot support an alleged "independent wrong." *See* Cal Code Regs. tit. 10, §§

**GOODWIN PROCTER LLP**
**Three Embarcadero Center, 24th Floor**
**San Francisco, California 94111**

3721-3732; *see also* 12 C.F.R. §34.47 (enforcement of standards pursuant to the Federal Deposit Insurance Act, permitting the Attorney General to bring an action, 12 U.S.C. § 1833a(e)).

**CONCLUSION**

For all of the foregoing reasons, Wells Fargo respectfully requests that this Court dismiss all claims (Counts I, II, and III) against it in the Complaint.

Dated: June 4, 2009

Respectfully submitted,

By: /s/ Brooks R. Brown

Brooks R. Brown
*bbrown@goodwinprocter.com*
**GOODWIN PROCTER LLP**
10250 Constellation Blvd.
Los Angeles, California 90067
Tel.: 310.788.5100
Fax: 310.286.0992

ROBERT B. BADER (SBN 233165)
*rbader@goodwinprocter.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center, 24th Floor
San Francisco, California 94111
Tel.: 415.733.6000
Fax.: 415.677.9041

Attorneys for Defendant: *Wells Fargo Bank, N.A.*

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

**PROOF OF SERVICE**

I further certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 4TH day of June, 2009.

/s/ Brooks R. Brown
Brooks R. Brown

GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111