1    GAYLE M. ATHANACIO (State Bar No. 130068)
SONNENSCHEIN NATH & ROSENTHAL LLP
2    525 Market Street, 26th Floor
San Francisco, CA 94105-2708
3    Telephone: (415) 882-5000
Facsimile: (415) 882-0300
4    gathanacio@sonnenschein.com

5    CHARLES A. NEWMAN (admitted *pro hac*)
ELIZABETH TEUTENBERG FERRICK (admitted *pro hac*)
6    SONNENSCHEIN NATH & ROSENTHAL LLP
One Metropolitan Square, Suite 3000
7    St. Louis, MO 63102
Telephone: (314) 241-1800
8    Facsimile: (314) 259-5959
cnewman@sonnenschein.com
9    eferrick@sonnenschein.com

10    Attorneys for Defendant
Valuation Information Technology, LLC
11    d/b/a RELS VALUATION

12

13           IN THE UNITED STATES DISTRICT COURT

14        FOR THE NORTHERN DISTRICT OF CALIFORNIA

15

16    SOUND APPRAISAL and SAVAGE       No. 4:09-cv-01630-CW
APPRAISAL SERVICES, INC., on behalf of
17    themselves and all others similarly situated,    DEFENDANT VALUATION
                                          INFORMATION TECHNOLOGY, LLC, d/b/a
18            Plaintiffs,              RELS VALUATION'S REPLY TO
                                          PLAINTIFF'S OPPOSITION TO MOTION
19        vs.                       TO DISMISS

20    WELLS FARGO BANK, N.A. and        Date:      September 17, 2009
VALUATION INFORMATION
21    TECHNOLOGY, LLC, d/b/a RELS       Time:      2:00 p.m.
VALUATION,                        Place:     Courtroom 2
22                                         Before:   Hon. Claudia Wilken
           Defendants.
23

24

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ......................................................................................................................1

I.  Plaintiffs' Conclusory Allegations And Arguments Cannot Salvage Their
Defective RICO Claim ..............................................................................................1

    A.  Plaintiffs Fail To Adequately Plead Their Section 1961(1) Mail And
Wire Fraud Claim. ........................................................................................1

    B.  Plaintiffs' Section 1961(1) RICO Claim Fails On The Merits As A
Matter Of Law. .............................................................................................3

    C.  Plaintiffs' Allegation Of A Section 1962(d) RICO Conspiracy Also
Suffers Critical Pleading Deficiencies. ........................................................7

II.  Plaintiffs' Claim For Interference With Prospective Economic Advantage
Fails As A Matter Of Law .......................................................................................10

CONCLUSION ..................................................................................................................13

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

DEF. RELS VALUATION REPLY TO PLAINTIFFS'
OPPOSITION TO RELS' MOTION TO DISMISS

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acciard v. Whitney*,
   2008 U.S. Dist. Lexis 98131 (M.D. Fla. Dec. 4, 2008)......................................3, 5

*Aetna Cas. Sur. Co. v. P&B Autobody*,
   43 F.3d 1546 (1st Cir. 1994) ............................................................................3, 5

*Aho Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   2008 WL 4830708 (N.D. Cal. Nov. 6, 2008) ......................................................11

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994)........................................................................................12

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................................................7, 8, 9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................................7, 8

*Bridge v. Phoenix Bond & Indem. Co.*,
   128 S. Ct. 2131 (2008) .....................................................................................5, 6

*Brunelle v. Compucom Sys., Inc.*,
   2008 WL 357376 (S.D. Cal. Feb. 8, 2008) .........................................................12

*Certain Underwriters at Lloyd's v. Real Estate Prof'l Ins. Co.*,
   2007 U.S. Dist. Lexis 88241 (C.D. Cal. Nov. 26, 2007)......................................11

*Fifty Assocs. v. Prudential Ins. Co. of Am.*,
   450 F.2d 1007 (9th Cir. 1971) ...............................................................................8

*First Magnus Fin. Corp. v. Star Equity Funding, L.L.C.*,
   2007 U.S. Dist. Lexis 8109 (D. Kan. Feb. 2, 2007) ...............................................3

*Freeman v. Quicken Loans, Inc.*,
   2009 U.S. Dist. LEXIS 69654 (E.D. La. Aug. 10, 2009).......................................9

*Gray v. Upchurch*,
   2006 U.S. Dist. Lexis 90184 (S.D. Miss. Dec. 13, 2006) ......................................3

*Howard v. Am Online, Inc.*,
   208 F.3d 741 (9th Cir. 2000)..................................................................................9

*In re MIPS Techs., Inc.*,
   2008 WL 3823726 (N.D. Cal. Aug. 13, 2008) ......................................................2

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

- ii -

DEF. RELS VALUATION REPLY TO PLAINTIFFS'
OPPOSITION TO RELS' MOTION TO DISMISS

*Jennings v. Auto Meter Prods., Inc.*,
  495 F.3d 466 (7th Cir. 2006)....................................................................... 4

*Jensen Enters., Inc. v. Oldcastle Precast, Inc.*,
  2009 WL 440492 (N.D. Cal. Feb. 23, 2009)............................................... 11

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003)............................................................................. 12

*Lancaster Cmty. Hosp v. Antelope Valley Hosp. Dist.*,
  940 F.2d 397 (9th Cir. 1991)........................................................................ 4

*Lovesy v. Armed Forces Benefit Ass'n*,
  2008 WL 696991 (N.D. Cal. Mar. 13, 2008).............................................. 12

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*,
  271 F.3d 825 (9th Cir. 2001)...................................................................... 12

*Mazza v. Am. Honda Motor Co.*,
  254 F.R.D. 610 (C.D. Cal. 2008) ............................................................... 10

*Mendoza v. Zirkle Fruit Co.*,
  301 F.3d 1163 (9th Cir. 2002)...................................................................... 6

*Miller v. Yokohama Tire Corp.*,
  358 F.3d 616 (9th Cir. 2004)........................................................................ 8

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993)............................................................................ 2

*Parkinson v. Hyundai Motor Am.*,
  2008 U.S. Dist. Lexis 101098 (C.D. Cal. Dec. 12, 2008) .................... 10, 11

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
  806 F.2d 1393 (9th Cir. 1986).................................................................. 1, 6

*Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.*,
  138 Cal. App. 4th 1215 (2006)................................................................... 12

*Sun Sav. & Loan Ass'n v. Dierdorff*,
  825 F.2d 187 (9th Cir. 1987)........................................................................ 6

*United States v. Fullwood*,
  342 F.3d 409 (5th Cir. 2003)........................................................................ 3

*United States v. Kohli*,
  110 F.3d 1475 (9th Cir. 1997)................................................................... 3, 5

*United States v. Nguyen*,
  504 F.3d 561 (5th Cir. 2007)........................................................................ 3

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

- iii -

*United States v. Owens,*
   301 F.3d 521 (7th Cir. 2002) ............................................................................. 3

*United States v. Panza,*
   750 F.2d 1141 (2d. Cir. 1984) ........................................................................... 3

*United States v. Suarez,*
   215 Fed. Appx. 872 (11th Cir. 2007) ................................................................. 3

*Wagner v. Magellan Health Servs., Inc.,*
   125 F. Supp.2d 302 (N.D. Ill. 2000) .................................................................. 4

*Wershba v. Apple Computer, Inc.,*
   91 Cal. App. 4th 224 (2001) ............................................................................ 10

**STATUTES**

Cal. Bus. & Prof. Code § 17200 .............................................................. 1, 10, 11

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8 ............................................................. 7, 8, 9

Federal Rule of Civil Procedure 9(b) ......................................................... 1, 2, 7

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

Case No. 4:09-cv-01630 CW

DEF. RELS VALUATION REPLY TO PLAINTIFFS'
OPPOSITION TO RELS' MOTION TO DISMISS

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

**INTRODUCTION**

Plaintiffs' Opposition to Defendant Valuation Information Technology, LLC, d/b/a Rels Valuation's ("Rels") motion to dismiss confirms Rels' motion should be granted. Indeed, in their Opposition, Plaintiffs do not dispute that their claim under California's Unfair Competition Law (Bus. & Prof. Code § 17200) should be dismissed with prejudice. Plaintiffs' efforts to salvage their remaining RICO and interference with prospective advantage claims are unavailing. Plaintiffs do not (and cannot) state a viable claim under RICO — Plaintiffs' conclusory allegations of "fraud" and "conspiracy" are insufficient as a matter of law. Likewise, Plaintiffs' interference with prospective advantage claim against Rels is legally and factually deficient. Because neither Plaintiffs nor Rels has any contacts with California and the claims against Rels did not arise in California, Plaintiffs cannot assert a California state law claim against Rels. Even if Plaintiffs' claims against Rels had some nexus to California (they do not), their interference with prospective economic advantage cause of action against Rels is not viable because Rels is a party to the relationship that Plaintiffs claim was obstructed. Accordingly, Rels' motion to dismiss should be granted.

**ARGUMENT**

**I.      Plaintiffs' Conclusory Allegations And Arguments Cannot Salvage Their Defective RICO Claim.**

Regurgitating improper cursory allegations and legal conclusions, Plaintiffs' Opposition does not cure the fatal absence of well-pleaded facts sufficient to state a claim against Rels for mail or wire fraud, or conspiracy under RICO. To the contrary, Plaintiffs' Opposition confirms that their RICO claim is fundamentally defective and should be dismissed.

**A.      Plaintiffs Fail To Adequately Plead Their Section 1961(1) Mail And Wire Fraud Claim.**

Plaintiffs do not dispute that under well-settled law and Rule 9(b), they must plead with particularity "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture*

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

*Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Tellingly, the Opposition does not cite to a single paragraph of the Complaint that purportedly provides the "who, what, when and where" of any single "fraudulent appraisal." Indeed, Plaintiffs concede that their allegations are not specific and only "generally describe" acts of wire and mail fraud. (Compl., Doc. No. 1, ¶ 107.) Fraud, however, does not exist in the abstract and Plaintiffs' conclusory allegations fall far short of meeting the heightened pleading requirement of Rule 9(b).

Nonetheless, Plaintiffs suggest that they have met their heightened pleading requirement because they vaguely describe in their Complaint purported communications with Rels and Wells Fargo that they characterize as "pressuring" and "blacklisting." (*Id.* at ¶¶ 108-112.) However, as Plaintiffs repeatedly concede, the "Defendants' scheme rested on *fraudulent appraisals*" — not alleged pressuring and blacklisting. (Pl. Br., Doc No. 18, 17 (emphasis added).) Yet Plaintiffs do not allege any facts related to any fraudulent appraisals. In fact, Plaintiffs do not:

- identify a single purportedly fraudulent appraisal;

- describe how any appraisal was fraudulent, *i.e.*, provide specific facts indicating that the value of the property was inflated or otherwise misstated;

- provide the date any fraudulent appraisal was created or communicated;

- identify any appraiser who created a "fraudulent" appraisal;

- identify any person or entity who relied on a specific "fraudulent" appraisal; or

- explain how the appraisal involved the use of the U.S. mails or interstate wires.

Instead, Plaintiffs ask this Court to assume the existence of "fraudulent" appraisals because, in three instances, Wells Fargo purportedly did not summarily accept Plaintiffs' appraisals but rather requested Rels seek explanation from Plaintiffs regarding the appraised properties. (Compl., Doc. No. 1, ¶¶ 44, 53.)[1] Plaintiffs do not even allege fraudulent appraisals were subsequently

---

[1] The Court should ignore Plaintiffs' other references to "confidential witness statements" (Compl., Doc. No. 1, ¶¶ 56-65.) These anonymous statements not only fail to state a claim for mail or wire fraud, but also fall far short of the requirements of Rule 9(b). *In re MIPS Techs., Inc.,* 2008 WL 3823726, * 6 (N.D. Cal. Aug. 13, 2008) (dismissing confidential witness statements for lack of specificity because the pleading rules require particularized facts); *see also Neubronner v. Milken,*

---

- 2 -

DEF. RELS VALUATION REPLY TO PLAINTIFFS'
                                       OPPOSITION TO RELS' MOTION TO DISMISS

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1   created in these three instances, much less by "whom, when, and how." The Complaint vaguely

2   references that Rels provided Plaintiffs with information or "materials" related to the properties, but

3   nowhere suggests, let alone states with particularity, how anything from Rels was fraudulent or led

4   to a fraudulent appraisal.  (*Id.* at ¶ 53.)[2]

5        For this reason, Plaintiffs' reliance on *Acciard v. Whitney*, 2008 U.S. Dist. Lexis 98131

6   (M.D. Fla. Dec. 4, 2008),[3] and the other cases cited on pages 13 and 14 of their Opposition[4] is

7   wholly misplaced.  In each of the cases on which Plaintiffs attempt to rely, there were specific

8   factual allegations showing fraudulent appraisals.  Here, Plaintiffs do not aver a single fraudulent

9   appraisal exists.  These pleading deficiencies doom Plaintiffs' Section 1961(1) RICO claim for mail

10  and wire fraud.

11  **B.   Plaintiffs' Section 1961(1) RICO Claim Fails On The Merits As A Matter
           Of Law.**

12

13       Plaintiffs' Section 1961(1) RICO claim also fails on the merits as a matter of law.  The

14  gravamen of Plaintiffs' lawsuit is that Defendants "pressured" Plaintiffs to revise their appraisals,

15  and when they refused to do so, put Plaintiffs on a "blacklist."  (Pl. Br., Doc. No. 18, 7-10.)  As

16

17  6 F.3d 666, 672 (9th Cir. 1993).

18  [2] That Plaintiffs would purport to assert quasi-criminal claims under RICO against Rels for its
    supposed questioning of a handful of their appraisals is misplaced and ironic.  Plaintiff Sound
19  Appraisal touts its role as one who conducts "review appraisals."  Apparently, it is appropriate for
    Plaintiff Sound Appraisal to review other appraisers' work, but "fraudulent" for Rels to do so. (*See*
20  Compl., Doc. No. 1, ¶ 42.)

21  [3] *Acciard* involved a real estate scheme whereby victims were purportedly induced to attend a
    seminar and purchase real estate based on "infomercials [that] were regularly televised."  *Id.* at 26.
22  Although the court discusses fraudulent appraisals at length, it did not analyze whether these
    appraisals were mail or wire fraud predicate acts.  *Id.*
23
24  [4] *See United States v. Nguyen*, 504 F.3d 561 (5th Cir. 2007); *United States v. Suarez*, 215 Fed.
    Appx. 872 (11th Cir. 2007); *United States v. Fullwood*, 342 F.3d 409 (5th Cir. 2003); *United States
    v. Owens*, 301 F.3d 521 (7th Cir. 2002); *United States v. Kohli*, 110 F.3d 1475  (9th Cir. 1997);
25  *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546 (1st Cir. 1994); *United States v. Panza*, 750
    F.2d 1141 (2d. Cir. 1984); *First Magnus Fin. Corp. v. Star Equity Funding, L.L.C.*, 2007 U.S. Dist.
26  Lexis 8109 (D. Kan. Feb. 2, 2007); *Gray v. Upchurch*, 2006 U.S. Dist. Lexis 90184 (S.D. Miss.
    Dec. 13, 2006).
27

28

- 3 -

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1   Rels showed in its opening brief and noted above, this alleged scheme (even if properly pleaded)

2   does not constitute mail or wire fraud. *See, e.g., Lancaster Cmty. Hosp v. Antelope Valley Hosp.*

3   *Dist.*, 940 F.2d 397 (9th Cir. 1991); *Wagner v. Magellan Health Servs., Inc.*, 125 F. Supp.2d 302

4   (N.D. Ill. 2000).  The law is clear:  blacklisting without more cannot form the basis for a mail or

5   wire fraud claim.  *Wagner*, 125 F. Supp.2d at 307.  Plaintiffs make no serious attempt to address

6   this authority. (*See* cursory discussion at Pl. Br., Doc. No. 18, 15 n. 5.)[5]  While Plaintiffs suggest

7   they can plead some other, non-fraud tort claim based on their blacklisting allegations (which Rels

8   disputes), blacklisting allegations simply do not support a RICO claim based on mail or wire fraud.

9   *See, e.g., Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472-73 (7th Cir. 2006) (RICO statute

10   was never intended to turn garden variety state law tort actions into federal RICO claims).

11       Nothing about the "pressuring" and "blacklisting" allegations can be the basis for any kind

12   of RICO-predicate "fraud," and Plaintiffs cannot stave off dismissal of their RICO claim by

13   repeating their Complaint's conclusory allegations about "fraudulent appraisals." (Pl. Br., Doc. No.

14   18, 12-13 (citing Compl., Doc. No. 1, ¶¶35, 36, 69).)  Even assuming *arguendo* that Wells Fargo's

15   lending practices resulted in inflated (*i.e.,* fraudulent) appraisals, Plaintiffs' purported injury — being

16   blacklisted from Rels' approved list — occurred regardless of whether or not a fraudulent appraisal

17   was created or transmitted to anyone via the mails or wires.

18       Under Plaintiffs' theory of the case, they were removed from Rels' approved list without

19   regard to the creation (or transfer via mail or wires) of a subsequent fraudulent appraisal.  The

20   purported "harm" to Plaintiffs — the "blacklisting" — had already occurred.  Accordingly, the cases

21   on which Plaintiffs rely for the proposition that fraudulent appraisals may constitute mail or wire

22

23

24   [5]  Plaintiffs incorrectly argue that "the cases cited by Rels are inapposite, because none involved a
scheme involving fraudulent appraisals . . . that *caused* the plaintiff to lose business." (Pl. Br., Doc.

25   No. 18, 15 n. 5) (emphasis added).  As explained above, however, there are no specific fraudulent
appraisals alleged in this litigation, and no fraudulent appraisal is alleged to have *caused* Plaintiffs'

26   loss.  Rather, it was the alleged pressure/blacklisting that supposedly precluded Plaintiffs from
performing appraisals for Defendants.  But blacklisting does not constitute a predicate act of mail

27   or wire fraud. *See, e.g., Wagner*, 125 F. Supp. 2d at 307.

28

1   fraud are, at best, inapposite. (Pl. Br., Doc. No. 18, 13-14.)  In stark contrast to the instant matter,

2   *all* of the cases Plaintiffs cite relate to victims who were directly harmed by fraudulent appraisals.

3   *See, e.g., United States v. Kohli*, 110 F.3d 1475 (9th Cir. 1997) (bona fide sellers of real estate and

4   lenders directly defrauded by scheme involving strawbuyers and loan requests based on inflated

5   appraisals); *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546 (1st Cir. 1994) (insurance

6   company directly defrauded by fraudulent claims); *Acciard v. Whitney*, 2008 U.S. Dist. Lexis 98131

7   (M.D. Fla. Dec. 4, 2008) (plaintiff-buyers fraudulently induced to purchase properties based on,

8   *inter alia*, overstated appraisal values).  And not one of these cases involves appraisers themselves

9   as the purported victims of the alleged fraud.

10          Nor, contrary to Plaintiffs' assertion, is Rels making a "reliance" argument that would

11   contravene the holding in *Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131 (2008).  (*See* Pl.

12   Br., Doc. No. 18, 15.)  Rather, Rels argues that there has been no "mail fraud" properly alleged

13   (with or without particularity) and no showing that any mail fraud was the *cause* of Plaintiffs'

14   injury.  *Bridge* merely holds that the alleged victim need not have directly relied on the fraudulent

15   misrepresentations to support a RICO violation (in contrast to the reliance requirement for a

16   common-law fraud claim).  *Id.* at 2145.  But *Bridge* also expressly reiterates that "but for" and

17   proximate causation are requirements for a RICO claim.  *Id.* at 2141.  Indeed, as Plaintiffs' own

18   cases confirm, RICO's requirement that a person be "injured in his business or property *by reason*

19   *of*" a RICO violation "incorporates a proximate cause standard."  (Pl. Br., Doc. No. 18, 16, quoting

20   *Diaz v. Gates*, 420 F.3d 897, 901 (9th Cir. 2005) (emphasis added).)

21          In cases like *Bridge*, the alleged fraud was relied upon by a third party and that fraud —

22   though directed at a third party — was the direct cause of the plaintiff's losses.[6]  Likewise, *all* of the

---

24   [6] In *Bridge*, several related entities filed false attestations that made it appear as though they were
25   independent entities to collusively bid at county tax sales in violation of a single bidder rule.  These
     false attestations were relied upon by the county such that the defendants were improperly allowed
26   to bid and acquire more liens. (Because they appeared to be independent entities, these related
     entities were awarded a greater portion of the liens than they were entitled to receive if acting in
27   compliance with the single bidder rule.)  Hence, even though other bidders at the tax sale did not
     *rely* on these false statements, the fraudulent practice directly caused the harm because they were

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

- 5 -

Case No. 4:09-cv-01630 CW                DEF. RELS VALUATION REPLY TO PLAINTIFFS'
                                         OPPOSITION TO RELS' MOTION TO DISMISS

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    cases that Plaintiffs cite to support their RICO claim involve direct causation and, as such, are

2    entirely distinguishable from the conduct alleged here. *See, e.g., Mendoza v. Zirkle Fruit Co.*, 301

3    F.3d 1163, 1170 (9th Cir. 2002) (upholding RICO allegations on grounds that employers' illegal

4    scheme to hire undocumented laborers had direct purpose and effect of depressing wages of

5    documented laborers). (*See also* Pl. Br., Doc. No. 18, 13-14 and discussion above in Section I.B.

6    distinguishing cited cases.) Moreover, while there may be any number of direct cause cases

7    involving fraudulent appraisals, none of them remotely support the backwards causation alleged

8    here. Even if "fraudulent appraisals" can serve as a predicate act for a RICO claim under the facts

9    of a particular case, they do not support a RICO claim when, as here, no fraudulent appraisals are

10   identified. Regardless, under Plaintiffs' theory of liability, any alleged fraudulent appraisals are

11   irrelevant to the harm they claim to have suffered.[7]

12        Finally, even if the amorphously asserted fraudulent appraisals caused Plaintiffs any harm,

13   Plaintiffs have failed to allege facts to support Rels' purported participation in "furtherance of a

14   scheme to defraud" through use of fraudulent appraisals — an essential element of a mail or wire

15   fraud claim. *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 195 (9th Cir. 1987) (mail fraud);

16   *Schreiber Distrib. Co.*, 806 F.2d at 1400 (wire fraud). The only allegation Plaintiffs rely on that

17   relates to Rels asserts that its "appraisal order form indicates the 'Borrower Estimated Value' and

18   that '[a]ppraisers know that this value reflects the value the appraiser is expected to meet or exceed

19   in order to 'make the deal.'" (Pl. Br., Doc. No. 18, 13 (citing Compl., Doc. No. 1, ¶ 36).) The

20   practice of stating the 'Borrower Estimated Value' on an appraisal order, however, is permitted by

22   _____

23   awarded fewer liens than they were entitled to receive. *Bridge,* 128 S. Ct. at 2135-36.

24   [7] In contrast to *Bridge*, in which the county's reliance on the collusive bidders' false representations ultimately caused the harm alleged, Plaintiffs here cannot allege any fraudulent
25   appraisals even existed or that anyone actually relied on one. As *Bridge* makes clear, RICO plaintiffs who allege injury "by reason of" a pattern of mail fraud likely cannot succeed "without
26   showing that *someone* relied on the defendant's misrepresentations" because "[i]n most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the
27   misrepresentation." 128 S. Ct. at 2145 (emphasis in original).

- 6 -

1    USPAP and does not support Plaintiffs' assertion that Rels' is involved in a "scheme to defraud."

2    Indeed, USPAP Advisory Opinion 19, at Illustration 5 (a true and accurate copy of which is

3    attached hereto as Exhibit 1) explicitly allows for estimated values to be provided as long as the

4    appraiser does not have to agree to meet that estimated value as a condition of the assignment.

5        For all of these reasons, Plaintiffs' Section 1961(1) RICO claim fails as a matter of law and

6    should be dismissed.

7        **C.    Plaintiffs' Allegation Of A Section 1962(d) RICO Conspiracy Also
        Suffers Critical Pleading Deficiencies.**

8

9        Plaintiffs' allegation of a RICO conspiracy under Section 1962(d) is premised on the same

10    deficient factual allegations as their Section 1961(1) RICO claim and, therefore, also fails to comply

11    with the pleading requirements of Rule 9(b).  Indeed, Plaintiffs' failure to sufficiently plead the

12    agreement element of their RICO conspiracy claim does not even meet the Rule 8 pleading

13    standard.  Contrary to Plaintiffs' assertions, the Court cannot infer the existence of an illegal

14    agreement from the allegation that Plaintiffs were allegedly blacklisted from the Rels' approved list

15    of appraisers.  (Pl. Br., Doc. No. 18, 18.)

16        As the Supreme Court recently clarified in *Twombly* and *Iqbal*, a plaintiff cannot rely on

17    "bare assertions" to state a claim even under Rule 8.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

18    556 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  In *Twombly*, the Supreme Court held in the

19    conspiracy context that courts are not bound to accept as true a legal conclusion couched as factual

20    allegation within a complaint.  550 U.S. at 555.  As further articulated in *Iqbal*: if the well-pleaded

21    facts do not permit the court to infer *more than the mere possibility of misconduct*, the complaint

22    does not satisfy Rule 8.  129 S. Ct. at 1950.  In other words, a complaint that pleads facts that are

23    merely consistent with liability is insufficient and should be dismissed.  *Id.* at 1949-50.

24        To determine if Rule 8 is satisfied, the Court must first eliminate conclusory allegations that

25    are not entitled to an assumption of truth and then consider only the remaining factual allegations to

26    determine if they plausibly suggest an entitlement to relief.  *Id.*  Applying this two-prong analysis in

27    *Iqbal,* the Supreme Court dismissed purposeful discrimination claims brought by Arab plaintiffs

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

- 7 -

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1   against the former Director of the FBI and the former Attorney General, holding that the mere fact

2   that the FBI arrested and detained Arabs did not plausibly suggest that the defendants discriminated

3   on prohibited grounds. *Id.* at 1954.[8]

4        Here, Plaintiffs' Complaint does not adequately allege facts to support a RICO conspiracy.

5   The mere fact that Plaintiffs were purportedly requested to provide (or were provided) additional

6   information related to three appraisals at some point prior to being removed from Rels' approved

7   list (Compl., Doc. No. 1, ¶¶ 44, 53) — the only arguably relevant, non-conclusory facts alleged in

8   the Complaint — does not lead to the conclusion that Rels conspired to remove Plaintiffs *because of*

9   Plaintiffs' refusal to falsify appraisal reports.[9] Just as in *Iqbal*, there are numerous, lawful

10  justifications for removal of an appraiser from Rels' approved list including poor performance,

11  unprofessional conduct, violation of USPAP, and loss of licensure, just to name a few. (*See* Home

12  Valuation Code of Conduct, Section I.B.8.) And as Plaintiffs grudgingly concede, appraised

13  amounts are opinions subject to legitimate and reasonable disagreement.[10] (*See* Pl. Br., Doc. No.

14  _____

15  [8] Plaintiffs do not address the pleading standard articulated in *Twombly* or *Iqbal* and the cases on

16  which Plaintiffs' attempt to rely all predate this recent Supreme Court precedent. (*See* Pl. Br., Doc. No. 18, 18.)

17  [9] In fact, even the heightened requirements of the Home Valuation Code of Conduct ("HVCC")

18  (which was adopted well *after* the transactions at issue in this case and contains rules designed to enhance the independence and accuracy of the appraisal process) expressly permit lenders or any

19  third party acting on a lender's behalf to request that an appraiser provide additional information or explanation about the basis of a valuation or request that the appraiser correct factual errors in the

20  appraisal report. (*See* HVCC, Section I.C., *available at* http: //www.freddiemac.com/singlefamily /pdf/122308_valuationcodeofconduct.pdf.)

21  [10] Indeed, the Complaint itself alleges purported disputes over the appraisers' "opinion" on

22  property values. (*See, e.g.*, Compl., Doc. No. 1, ¶¶ 52-53.) Plaintiffs' unsupported reading of the cases cited by Rels in its opening brief does not change the well-settled law that property valuations

23  are opinions only and expressions of opinion are not actionable as fraud. *See, e.g.*, *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004); *Fifty Assocs. v. Prudential Ins. Co. of*

24  *Am.*, 450 F.2d 1007, 1010 (9th Cir. 1971) (citing *Sacramento Suburban Fruit Lands Co. v. Melin*, 36 F.2d 907, 910 (9th Cir. 1929)). Moreover, Plaintiffs' reliance on *Fifty Associates* for an argument that Rels acted as an expert in the instant matter is misplaced. The *Fifty Associates* court

25  in fact rejected this argument on facts far more persuasive than those present here. 450 F.2d at

26  1011 (finding leading insurance company investing in real estate mortgages did not act as an expert when it conveyed its appraisals to a business specializing in real estate, despite charging $27,000

27  for its appraisal services).

28

- 8 -

Case No. 4:09-cv-01630 CW          DEF. RELS VALUATION REPLY TO PLAINTIFFS'
OPPOSITION TO RELS' MOTION TO DISMISS

18, 17.)  Thus, the handful of "facts" alleged by Plaintiffs are not enough to satisfy Rule 8.  *See Iqbal*, 129 S. Ct. at 1949.

Certainly, the Complaint does not adequately allege, via well-pleaded, non-conclusory facts, that Rels was aware of, or agreed to participate in any improper pressuring or blacklisting of its appraisers by Wells Fargo.  Rels is a joint venture between Wells Fargo Foothill and First American Real Estate Solutions.  Notwithstanding Plaintiffs' factually barren rhetoric that this relationship makes Rels a "'captive' puppet of Wells Fargo" (Pl. Br, Doc. No. 18, 8), they concede this affiliated business relationship is expressly permitted by RESPA.  (*Id.* at 11.)  Contrary to Plaintiffs' insinuations, the mere affiliation of Rels and Wells Fargo does not indicate any agreement to unlawfully pressure or blacklist appraisers.  *See, e.g.*, *Freeman v. Quicken Loans, Inc.*, 2009 U.S. Dist. LEXIS 69654, **66-67 (E.D. La. Aug. 10, 2009) (addressing nearly identical facts, court rejected plaintiffs' argument that affiliated business relationship between lender and appraisal management company suggests collusive behavior).  Nor does the fact that Rels, not Wells Fargo, communicated with appraisers regarding property valuation (Pl. Br., Doc. No. 18, 6) suggest any nefarious conspiracy — these communications took place in the ordinary course of business.[11] Without any facts to support the wholly conclusory assertion that an agreement to improperly pressure or blacklist appraisers existed between Rels and Wells Fargo, Plaintiffs' RICO conspiracy claim necessarily fails.

In sum, Plaintiffs have failed to plead their RICO claim with the requisite particularity, have failed to plead a sufficient conspiracy, and failed to establish a proper predicate act (*i.e.*, mail or wire fraud).  Without a RICO violation, no RICO conspiracy claim can stand.  *Howard v. Am*

---

[11]  The HVCC now mandates this procedure.  In order to avoid undue pressure, lenders, such as Wells Fargo, cannot directly contact appraisers seeking value reconsiderations.  (*See* HVCC Frequently Asked Questions, at Q60, *available at http://www.appraisal.state.az.us/userfiles/file/07%2009%20FNMA%20HVCC%20FAQ%20Updates.pdf*).

Case No. 4:09-cv-01630 CW                DEF. RELS VALUATION REPLY TO PLAINTIFFS'
                                         OPPOSITION TO RELS' MOTION TO DISMISS

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

*Online, Inc.,* 208 F.3d 741, 751 (9th Cir. 2000). For any and all of these reasons, Plaintiffs' RICO claim should be dismissed.

## II. Plaintiffs' Claim For Interference With Prospective Economic Advantage Fails As A Matter Of Law.

Plaintiffs do not oppose the dismissal of their California state law claim under the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), yet press forward with their equally flawed California state law claim for interference with prospective economic advantage. (*See* Pl. Br., Doc. No. 18, 1, n.1.) Regardless, Plaintiffs' Opposition, curiously relying on predominately UCL cases, does not offer any reason why Plaintiffs, two non-California residents with no connection to California, should be permitted to assert this California state law claim against Rels, an Iowa limited liability company with its headquarters in Minnesota.

While Plaintiffs continue to recite Defendant Wells Fargo's purported California connections, none of Plaintiffs' allegations even remotely tie *Rels* to California. Plaintiffs' vague and unsupported assertion that the "scheme originated there" does not pass muster even under the cases Plaintiffs cite. (Pl. Br., Doc. No. 18, 19.) *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 243 (2001), merely stands for the proposition that California statutes may be applied to non-California members of a class where the defendant is in fact a California corporation *and* the challenged conduct emanated from California. (Pl. Br., Doc. No. 18, 19.) This case is inapplicable to Rels, a non-California corporation. Plaintiffs' remaining case citations are equally unpersuasive and similarly rely on the defendants' significant and well-established relationships with California and California contacts that were directly relevant to the claims at issue. *See Parkinson v. Hyundai Motor Am.*, 2008 U.S. Dist. Lexis 101098, **46-48 (C.D. Cal. Dec. 12, 2008) (defendants' headquarters, marketing department, warranty department, customer affairs department and engineering department located in California and relevant conduct emanated from California headquarters); *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 620 (C.D. Cal. 2008) (defendant was a California corporation with its principal place of business in California, and the design and

- 10 -

Case No. 4:09-cv-01630 CW

DEF. RELS VALUATION REPLY TO PLAINTIFFS'
OPPOSITION TO RELS' MOTION TO DISMISS

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    marketing of system component at issue took place in California.)  None of these cases support

2    application of California law to Rels.[12]

3          Plaintiffs' remaining arguments on the merits of this claim can be dispensed with quickly.

4    Plaintiffs' peculiar reliance on *Certain Underwriters at Lloyd's v. Real Estate Prof'l Ins. Co.*, 2007

5    U.S. Dist. Lexis 88241, **19-23 (C.D. Cal. Nov. 26, 2007), a case Rels cited in its opening brief, is

6    misplaced.  Plaintiffs' vague allegations about loss of a "substantial amount of business" from

7    "economic relationships" with unnamed "mortgage brokers and mortgage lenders" (Compl., Doc.

8    No. 1, ¶¶ 129-30) are a far cry from the specific allegations that were upheld in *Certain*

9    *Underwriters* for interference with a contract between two named companies for a guaranteed, pre-

10   paid, compensation rate.  2007 U.S. Dist. Lexis 88241 at **19-23.  Rather, Plaintiffs' allegations of

11   unspecified relationships with unnamed parties for non-existent future potential business are much

12   more akin to those claims in *Certain Underwriters* that the court dismissed.  *Id.* at 23 (dismissing

13   claim for "prospective relationships with real estate, mortgage and home industry").

14         Plaintiffs' allegations of independently wrongful conduct are likewise unavailing.  As

15   discussed in Rels' opening brief and above, Plaintiffs' RICO claim fails and it therefore cannot

16   support the instant claim for interference with prospective advantage.  *See, e.g., Jensen Enters., Inc.*

17   *v. Oldcastle Precast, Inc.*, 2009 WL 440492, *8 (N.D. Cal. Feb. 23, 2009) (dismissing a tortious

18   interference claim that was dependent on a failed antitrust claim); *Aho Enters., Inc. v. State Farm*

19   *Mut. Auto. Ins. Co.*, 2008 WL 4830708, **2-3 (N.D. Cal. Nov. 6, 2008) (dismissing claim for

20   interference where the underlying UCL claims failed).  Moreover, Plaintiffs' Complaint does not

21   allege any violations of USPAP (or identify any other independent wrong). (Compl., Doc. No. 1, ¶¶

22   126-30.)  Plaintiffs' only allegations merely assert that "Defendants knew about [Plaintiffs']

23

24   [12] Plaintiffs also argue that Rels was required to demonstrate a conflict between different state

25   laws. (Pl. Br., Doc. No. 18, 20.)  This argument is inapposite.  Rels would only bear this burden if
     Plaintiffs established that Rels had sufficient contacts with California to apply California law to

26   Rels. *See, e.g., Parkinson v. Hyundai Motor Am.*, 2008 U.S. Dist. Lexis 101098, **44-46 (citing
     *Phillips Petroleum v. Shutts*, 472 U.S. 797, 821 (1985)).  As discussed above, Plaintiffs have not

27   and cannot meet this burden so there is no reason to even reach other state's laws.

28

- 11 -

1    relationships [with mortgage brokers and lenders] and intentionally and successfully engaged in the

2    conduct alleged in the Complaint for the purpose of disrupting those relationships." (*Id.* at ¶ 129.)

3    Such conclusory allegations are not sufficient.  *Lovesy v. Armed Forces Benefit Ass'n*, 2008 WL

4    696991, *12 (N.D. Cal. Mar. 13, 2008); *Brunelle v. Compucom Sys., Inc.*, 2008 WL 357376, * 7

5    (S.D. Cal. Feb. 8, 2008).   Regardless, nothing in USPAP precludes an appraisal management

6    company, such as Rels, from providing an appraiser with "Borrower Estimated Value" or

7    comparables. (Pl. Br., Doc. No. 18, 7.)  (*See* Ex. 1.)[13]

8         Finally, courts have consistently held that the tort of interference can only be asserted

9    against a stranger to the relationship.  *See, e.g.*, *Marin Tug & Barge, Inc. v. Westport Petroleum,*

10   *Inc.*, 271 F.3d 825, 832 (9th Cir. 2001); *Stevenson Real Estate Servs., Inc.*, 138 Cal. App. 4th at

11   1220; *cf. Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994).  Notably,

12   Plaintiffs do not offer any argument to rebut this well-settled law or its fatal application in the

13   current case.  Here, Plaintiffs' only complaint is that Rels interfered with Plaintiffs' relationship

14   with Rels and Wells Fargo.  Rels is a party to the relationship, not a stranger to it, and the tort of

15   interference cannot lie against it.

16        For the myriad of reasons cited above, Plaintiffs' claim for interference with prospective

17   economic advantage fails and should be dismissed.

18

19

20

21   [13] Even if Plaintiffs could identify a USPAP violation, Plaintiffs reliance on *Korea Supply Co. v.*
     *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (2003) is misplaced.  (Pl. Br., Doc. No. 18, 21.)  In

22   *Korea Supply*, the California Supreme Court allowed an interference claim to go forward based on
     alleged conduct that was independently actionable through criminal enforcement under the Foreign

23   Corrupt Practices Act.  *Korea Supply*, 29 Cal. 4th at 1158-59.  In applying the independently
     actionable requirement established in *Korea Supply* to an alleged violation of trade association

24   rules, California courts have found that it "necessarily requires that the rules or standards provide
     for, or give rise to, a sanction or means of enforcement for a violation of the particular rule or

25   standard that allegedly makes the defendant's conduct wrongful."  *Stevenson Real Estate Servs.,*
     *Inc. v. CB Richard Ellis Real Estate Servs., Inc.*, 138 Cal. App. 4th 1215, 1223 (2006).  Plaintiffs

26   do not offer any argument that a violation of USPAP is independently actionable or identify any
     enforcement mechanism for USPAP.

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

- 12 -

**CONCLUSION**

      For the reasons stated herein and in Rels' opening brief, Defendant Rels respectfully requests that Plaintiffs' Complaint be dismissed with prejudice in its entirety.

Dated:  September 3, 2009          Respectfully submitted,

                        SONNENSCHEIN NATH & ROSENTHAL LLP

                        By:_____/S/_____
                             GAYLE M. ATHANACIO
                             CHARLES A. NEWMAN
                             ELIZABETH TEUTENBERG FERRICK

                        Attorneys for Defendant
                        VALUATION INFORMATION TECHNOLOGY, LLC, d/b/a RELS VALUATION

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

27331689\V-1

# EXHIBIT  1

# ADVISORY OPINIONS

## Illustrations (AO-19)

Some of the requests shown in the Background section of this Advisory Opinion share common characteristics. Possible responses to each common group of requests could be:

1. *We need comps for (a specific property) that will support a loan of _____; can you provide them?*

   "Maybe, but I'll need to research the market to know whether the 'comps' will support a value range relative to the loan amount. In doing this, I will be deciding which sales are 'comps' and what those 'comps' mean. Those decisions will result in a range of value for your prospective borrower's property, which is an appraisal.

   You also need to recognize that there are risks in this kind of assignment. You should realize that my value conclusion could change if I subsequently perform an appraisal. Under the research and analysis limitations you suggest, I would not have verified some of the data and would have to use extraordinary assumptions about the market data and your borrower's property information. I would not have performed some of the analyses steps I might complete in an appraisal assignment without those limitations. If all of that is agreeable to you, we can proceed."

2. *Sales Price: _____.*

   "As long as the amount is only to inform me of the pending contract [or of the sale price] and is not a condition for your placement of this assignment with me, we can proceed. However, if that amount is a condition of this assignment, accepting an assignment under that condition violates professional ethics."

   Note: A sale price (in a pending or a settled transaction) is part of the information an appraiser is required to ascertain in accordance with Standards Rules 1-5(a) and (b). Receiving this information with a request for service is appropriate, but accepting an assignment with the price in an agreement of sale, option, or listing or a sale price in a settled transaction as a predetermined value in the assignment violates USPAP.

3. *Approximate (or Minimum) value needed: _____.*

4. *Amount needed: _____.*

5. *Owner's estimate of value: _____.*

"As long as the amount is only to inform me of your objectives or someone else's opinion and is not a condition for your placement of this assignment with me, we can proceed. However, if that amount is a condition of this assignment, accepting an assignment under that condition violates professional ethics."

6.  *If this property will not appraise for at least _____, stop and call us immediately.*

7.  *Please call and notify if it is NOT possible to support a value at or above _____, BEFORE YOU PROCEED!!!!*

"Your request is acknowledged, but it is important for you to be aware that I must develop an appraisal before I can tell you whether the property will support the value indicated. It is also important for you to be aware that your statement of that amount with this request for service does not, in my view, establish a 'condition' for my performing the appraisal. If you intend it to be a condition for performing the assignment, I cannot accept the assignment because it violates professional ethics."

TABLE OF CONTENTS

USPAP 2008–2009 Edition
©The Appraisal Foundation