1

2

3

4

5

6

7

8

9

Brooks R. Brown (SBN 250724)
*bbrown@goodwinprocter.com*
**GOODWIN PROCTER LLP**
10250 Constellation Blvd.
Los Angeles, CA  90067
Tel.:  310.788.5100
Fax: 310.286.0992

Robert B. Bader (SBN 233165)
*rbader@goodwinprocter.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center, 24th Floor
San Francisco, CA  94111
Tel.:  415.733.6000
Fax:  415.677.9041

Attorneys for Defendant:
*Wells Fargo Bank, N.A.*

10

11

12

13

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

14

15

16

17

18

19

20

21

22

| | |
|---|---|
| SOUND APPRAISAL and SAVAGE APPRAISAL SERVICES, INC., on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>     v.<br><br>WELLS FARGO BANK, N.A. and VALUATION INFORMATION TECHNOLOGY, LLC, d/b/a RELS VALUATION,<br><br>        Defendants. | Case No. 4:09-cv-01630-CW<br><br>**WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date:        September 17, 2009<br>Time:       2:00 p.m.<br>Courtroom:  Courtroom 2, 4th Floor<br>Judge:     Hon. Claudia Wilken<br><br>Filed/Lodged Herewith:<br><br>1.  Appendix of Lexis/Westlaw Cases |

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................... 1

ARGUMENT ..................................................................................................... 1

    I.    Wells Fargo Bank, N.A. Should be Dismissed. ......................................... 1

    II.    Plaintiffs' RICO Claims Should Be Dismissed. ....................................... 2

        A.    Plaintiffs Do Not Plead A Pattern Of Racketeering Activity. ................................................................................... 2

            1.    Plaintiffs Do Not Plead a Single Predicate Act By Wells Fargo. ........................................................ 2

            2.    Confidential Witness Statements Cannot Be Used to State a RICO Claim Against Wells Fargo. ......................... 5

        B.    The "Wells Fargo Brokerage Enterprise" Is Not a Cognizable RICO Enterprise. ................................................ 7

        C.    Plaintiffs Do Not Show How the Alleged RICO Enterprise Proximately Harmed Them. ................................... 9

        D.    Plaintiffs Fail To State a Claim for RICO Conspiracy Under Subsection 1962(d). ............................................. 10

    III.    Plaintiffs Fail to State a Claim for Interference with Prospective Economic Advantage. ....................................................................... 11

        A.    Plaintiffs Do Not Allege an "Independent Wrong." .................. 11

        B.    Plaintiffs Do Not Identify Any Third-Party Relationship That Was Disrupted. ....................................................... 13

CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*Acciard v. Whitney*, No. 2:07-cv-476-UA-DNF,
    2008 U.S. Dist. LEXIS 98131 (M.D. Fla. Dec. 4, 2008) .................................................... 4, 5

*Aetna Cas. Sur. Co. v. P & B Autobody.*,
    43 F.3d 1546 (1st Cir. 1994) ................................................................................................ 5

*Aho Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-cv-04133-SBA,
    2008 WL 4830708 (N.D. Cal. Nov. 6, 2008) ......................................................................... 12

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ............................................................................................................ 9

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ................................................................................................ 1, 2, 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 1, 9, 10

*Berson v. Applied Signal Technology*,
    527 F.3d 982 (9th Cir. 2008) ......................................................................................... 6, 7

*Boyle v. United States*,
    129 S. Ct. 2237 (2009) ...................................................................................................... 8

*Bridge v. Phoenix Bond & Indemnity Co.*,
    128 S. Ct. 2131 (2008) ..................................................................................................... 10

*Brunelle v. Compucom Sys., Inc.*, No. 06CV2755 JLS (CAB),
    2008 WL 357376 (S.D. Cal. Feb. 8, 2008) ........................................................................ 11

*Certain Underwriters at Lloyd's v. Real Estate Prof'ls Ins. Co.*,
    No. CV 06-4783 CAS (JWJx), 2007 U.S. Dist. LEXIS 88241 (C.D. Cal. 2007) .................. 14

*Clarke v. City of Madera*, No. CV-F-07-1806-LJO-DLB,
    2008 WL 752591 (E.D. Cal. Mar. 19, 2008) ...................................................................... 2

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
    479 F.3d 1099 (9th Cir. 2007) .......................................................................................... 13

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
    11 Cal. 4th 376 (1995) ................................................................................................ 1, 12

*Dickson v. Microsoft Corp.*,
    309 F.3d 193 (4th Cir. 2002) ............................................................................................. 9

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004) ............................................................................ 2, 7

*First Magnus Fin. Corp. v. Star Equity Funding, L.L.C.*, No. 06-2426-JWL,
   2007 U.S. Dist. LEXIS 8109 (D. Kan. Feb. 2, 2007) ........................................ 5

*Holmes v. Sec. Investor Prot. Corp.*,
   503 U.S. 258 (1992) ............................................................................................ 9

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ............................................................................ 10

*In re Actimmune Mktg. Litig.*,
   614 F. Supp. 2d 1037 (N.D. Cal. 2009) ............................................................ 10

*In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig.*,
   601 F. Supp. 2d 1201 (S.D. Cal. 2009) .............................................................. 8

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ........................................................................ 6, 7

*In re MIPS Techs., Inc.*, No. C-06-06699 RMW,
   2008 WL 3823726 (N.D. Cal. Aug. 13. 2008) ................................................... 5

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*, No. 05-CV-1018-JLS (LSP),
   2009 U.S. Dist. LEXIS 62949 (S.D. Cal. 2009) ................................................ 8

*Jensen Enters., Inc. v. Oldcastle Precast, Inc.*, No. C 06-247 SI,
   2009 WL 440492 (N.D. Cal. Feb. 23, 2009) ..................................................... 12

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ................................................................ 11, 12, 13, 14

*Kruse v. Bank of Am.*,
   248 Cal. App. 3d 38 (Cal. Ct. App. 1988) ........................................................ 14

*Lovesy v. Armed Forces Benefit Ass'n*, No. C 07-2745 SBA,
   2008 WL 696991 (N.D. Cal. Mar. 13, 2008) .............................................. 11, 12

*Lozano v. AT&T Wireless Servs.*,
   504 F.3d 718 (9th Cir. 2007) ............................................................................. 6

*Marks v. Ocwen Loan Servicing.*, No. C 07-2133 SI,
   2009 U.S. Dist. LEXIS 35251 (N.D. Cal. Apr. 10, 2009) .................................. 3

*Mehmet v. PayPal, Inc.*, No. C-08-01961 RMW,
   2009 U.S. Dist. LEXIS 29846 (N.D. Cal. Mar. 26, 2009) ................................. 3

ii

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ................................................................................ 2

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ............................................................................... 5, 6

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) ........................................................................... 2, 6

*Oki Semiconductor Co. v. Wells Fargo Bank*,
  298 F.3d 768 (9th Cir. 2002) .............................................................................. 10

*Savage v. Council on American-Islamic Relations, Inc.*, No. C 07-6076 SI,
  2008 WL 2951281 (N.D. Cal. July 25, 2008) .................................................... 10

*Smith v. Jenkins*,
  626 F. Supp. 2d 155 (D. Mass. 2009) .................................................................. 8

*Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.*,
  138 Cal. App. 4th 1215 (Cal. Ct. App. 2006) ................................................... 13

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ............................................................................... 3

*Tatum v. Schwartz*, No. Civ. S-06-01440 DFL EFB,
  2007 WL 419463 (E.D. Cal. Feb. 5, 2007) .......................................................... 2

*Terarecon, Inc. v. Fovia, Inc.*, No. C 05-4407 CW,
  2006 WL 1867734 (N.D. Cal. July 6, 2006) ...................................................... 12

*Teraecon, Inc. v. Fovia, Inc.*, No. C 05-4407 CW,
  2006 WL 2691405 (N.D. Cal. Sept. 20, 2006) .................................................. 12

*United States v. Chandler*,
  388 F.3d 796 (11th Cir. 2004) ............................................................................. 9

*United States v. Fullwood*,
  342 F.3d 409 (5th Cir. 2003) ............................................................................... 4

*United States v. Kohli*,
  110 F.3d 1475 (9th Cir. 1997) ............................................................................. 4

*United States v. Nguyen*,
  504 F.3d 561 (5th Cir. 2007) ............................................................................... 4

*United States v. Owens*,
  301 F.3d 521 (7th Cir. 2002) ............................................................................... 4

iii

*United States v. Panza*,
    750 F.2d 1141 (2d Cir. 1984) .................................................................. 5

*United States v. Suarez*,
    215 Fed. App'x 872 (11th Cir. 2007) ...................................................... 4

*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003) ......................................................... 3, 12

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
    42 Cal. App. 4th 507 (Cal. Ct. App. 1996) ........................................... 14

*Whitson v. Bumbo*, No. C 07-05597 MHP,
    2009 U.S. Dist. LEXIS 32282 (N.D. Cal. Apr. 15, 2009) ....................... 3

## **RULES AND REGULATIONS**

Fed. R. Civ. P. 8 ............................................................................................ 9

Fed. R. Civ. P. 9(b) ............................................................................. passim

WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:09-cv-01630-CW

## INTRODUCTION

Rather than respond substantively to the issues Wells Fargo raises in its Motion to Dismiss and use their Opposition to explain how the allegations in their Complaint state a claim, Plaintiffs Sound Appraisal and Savage Appraisal Services, Inc. (collectively, "Plaintiffs") devote nearly 12 pages of their 22-page Opposition brief to repeating the allegations in their Complaint *verbatim*. *See* Plaintiffs' Opposition to Wells Fargo's Motion to Dismiss ("Opposition" or Opp.") at 1-12. But, as Wells Fargo demonstrated in its Opening Memorandum (at 6) and Plaintiffs concede as to their UCL claim (Opp. at 1, n.1),[1] Plaintiffs' allegations do not state a claim against Wells Fargo. Merely repeating the same defective allegations does not (and cannot) change this conclusion. Moreover, as discussed more fully below, Plaintiffs' Opposition arguments are all unavailing, because they (1) are non-responsive to or otherwise ignore Wells Fargo's dismissal arguments, (2) are predicated upon conclusory allegations the Supreme Court has made clear are insufficient to state a claim, (3) are predicated on inapposite or misapplied legal authority, and/or (4) demonstrate a basic misunderstanding of the residential appraisal industry. Plaintiffs' claims against Wells Fargo thus should be dismissed in their entirety.

## ARGUMENT

### I. Wells Fargo Bank, N.A. Should Be Dismissed.

Plaintiffs offer no substantive response whatsoever to Wells Fargo's argument that their claims should be dismissed because the Complaint is devoid of the requisite allegations of specific actionable conduct by Wells Fargo directed to Sound Appraisal and/or Savage Appraisal necessary to state a claim. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952 (2009) (requiring that a complaint contain plausible *factual* allegations in order to state a claim); *Bell Atlantic Corp. v. Twombly*, 550

---

[1] Plaintiffs' non-opposition "to the dismissal of their claim for injunctive relief" under the UCL requires the dismissal of Count 2 in its entirety with prejudice. Opp. at 1, n.1, 22, n.160. This is because the only relief sought as part of Plaintiffs' UCL claim is injunctive relief. Compl. ¶ 125. Moreover, as Wells Fargo demonstrated in its Opening Memorandum (at 19-21), Plaintiffs' UCL claim is defective for numerous other reasons as well. Recognizing the merit of Wells Fargo's arguments, Plaintiffs offer no response to them. *See generally* Opp. As such, these arguments also support dismissal of the UCL claim (Count 2) with prejudice. In any event, because Plaintiffs do not oppose dismissal of Count 2, Wells Fargo does not further address it herein.

U.S. 544, 553-55 (2007) (mere "labels and conclusions" cannot survive a Rule 12(b)(6) motion). The reason for this is obvious: Plaintiffs have no response and can point to no factual allegation in the Complaint sufficient to state their RICO (Count 1) or interference with economic advantage (Count 3) claims against Wells Fargo.  Plaintiffs thus should be deemed to have conceded Wells Fargo's arguments, and their claims against it dismissed.  *Clarke v. City of Madera*, No. CV-F-07-1806-LJO-DLB, 2008 WL 752591, at *5-6 (E.D. Cal. Mar. 19, 2008); *Tatum v. Schwartz*, No. Civ. S-06-01440 DFL EFB, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5, 2007).

In responding to other of Wells Fargo's arguments, Plaintiffs point to certain conclusory allegations in the Complaint as being "misrepresentations or fraudulent conduct by Wells Fargo." Opp. at 12-13 (citing Compl. ¶¶ 34-36, 39).  But, as Wells Fargo demonstrated in its Memorandum (at 6), none of these are factual allegations of misrepresentations or fraudulent conduct by Wells Fargo relating to Plaintiffs, and so cannot sustain their claims.  Mem. at 6-7; *Iqbal*, 129 S. Ct. at 1952.  Put simply, because Plaintiffs fail to plead factual allegations connecting Wells Fargo to either the alleged "blacklist" or to any specific action taken in connection with the appraisals identified in the Complaint, Wells Fargo should be dismissed from this action.  *Iqbal*, 129 S. Ct. at 1952; *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).

## II.  Plaintiffs' RICO Claims Should Be Dismissed.

### A.  Plaintiffs Do Not Plead A Pattern Of Racketeering Activity.

#### 1.  Plaintiffs Do Not Plead a Single Predicate Act By Wells Fargo.

Plaintiffs contend in their Opposition that "Wells Fargo misapprehends Plaintiffs' RICO claim when it argues that Plaintiffs fail to allege any misrepresentations or fraudulent conduct by Wells Fargo or Rels."  Opp. at 12.  But it is Plaintiffs that misstate Wells Fargo's argument.  That argument is that Plaintiffs' RICO claims fail because they do not plead any conduct—fraudulent or otherwise—directed to them by Wells Fargo.  Mem. at 8-12.  *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) ("Rule 9(b)'s requirement that 'in all averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims.") (citation omitted)).  Rather, as Wells Fargo demonstrated in its Memorandum (at 6) and Plaintiffs' bare recitation of their allegations in the Opposition confirms, Plaintiffs make only general allegations that Wells Fargo and Rels "suspended or removed [appraisers] from the approved appraiser list" and that they attempted to "pressure appraisers to change the values in their appraisal reports."  Compl. ¶ 108.  Plaintiffs do not plead how these allegations constitute fraudulent conduct, misrepresentations or "set forth what is false or misleading about a statement, and why it is false."  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and quotations omitted); *Marks v. Ocwen Loan Servicing.*, No. C 07-2133 SI, 2009 U.S. Dist. LEXIS 35251, at *11 (N.D. Cal. Apr. 10, 2009); *Mehmet v. PayPal, Inc.*, No. C-08-01961 RMW, 2009 U.S. Dist. LEXIS 29846, at *6 (N.D. Cal. Mar. 26, 2009).[2]  Nor do Plaintiffs make any factual allegations about the specific role Wells Fargo purportedly played in the alleged fraudulent scheme.  Compl. ¶ 108.  This ignores Rule 9(b)'s requirement that a plaintiff suing multiple defendants must "inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citations and quotations omitted); *see Whitson v. Bumbo*, No. C 07-05597 MHP, 2009 U.S. Dist. LEXIS 32282, at *21 (N.D. Cal. Apr. 15, 2009).

Moreover, despite Plaintiffs' characterization of the Memorandum, Wells Fargo does not argue that a fraudulent appraisal could never constitute mail or wire fraud.  Opp. at 13.  Rather, it is Wells Fargo's position that Plaintiffs' Complaint does not allege with particularity any misrepresentations or false statements contained in an appraisal report that could form the basis of an act of mail or wire fraud actionable against it by Plaintiffs.  Mem. at 8-12.  This is because, among other reasons, Plaintiffs fail to (1) identify any false statement contained in any appraisal, (2) indicate who performed any allegedly false appraisals, (3) identify any of the "who, what, where or why" of any alleged mail or wire fraud with respect to an appraisal, or (4) tie any alleged

---

[2]   As Wells Fargo demonstrated in the Memorandum (at 13), removing appraisers from an approved appraiser list or communicating with them about values in appraisal reports is not itself fraudulent conduct that could constitute racketeering activity in violation of RICO.  Plaintiffs' Opposition ignores this argument and the authorities advanced in support of it.

WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:09-cv-01630-CW

1    misrepresentations by Wells Fargo to the appraisals the Plaintiffs allege they conducted.  *See*

2    *generally* Compl.

3        Further, even beyond the lack of factual allegations to support Plaintiffs' speculative

4    fraudulent appraisal theory, none of the cases cited by them for the contention that "fraudulent

5    appraisals constitute mail and wire fraud, which are predicate acts for RICO claims" actually

6    analyze the circumstances under which false statements contained in an appraisal could constitute

7    an act of mail or wire fraud.  Opp. at 13.  For example, the only Ninth Circuit case on which

8    Plaintiffs rely for this proposition, *United States v. Kohli*, is inapposite because it is bereft of any

9    discussion concerning what constitutes mail or wire fraud, and instead focuses on the application

10   of sentencing guidelines to sentences imposed on criminal RICO defendants (who entered into a

11   plea bargain concerning a sham real estate transfer).  110 F.3d 1475, 1476 (9th Cir. 1997).[3]

12       Plaintiffs' reliance on *Acciard* for the contention that fraudulent appraisals somehow

13   "violate the mail fraud statute" is also misguided.  Opp. at 14.  As an initial matter, the portion of

14   *Acciard* decision cited by Plaintiffs does not examine the issue of whether the "fraudulent

15   appraisal values" are themselves predicate RICO acts of mail or wire fraud, but rather concerns

16   claims for constructive fraud and fraud in the inducement.  *Acciard v. Whitney*, No. 2:07-cv-476-

17   UA-DNF, 2008 U.S. Dist. LEXIS 98131, at *10, 15-16, 34 (M.D. Fla. Dec. 4, 2008).  The only

18   predicate RICO acts analyzed were "infomercials [that] were regularly televised," not the

19   allegedly false appraisals.  *Id.* at *26.  Further, in contrast to Plaintiffs' allegations here, in *Acciard*

20   there was an actual showing of a false appraisal, which the court considered here only in the

---

21       [3]    The other cases cited by Plaintiffs do not advance their argument.  *Nguyen* concerns the
22   issue of whether the government had proven the specific intent required to sustain a mail or wire
     fraud claim in prosecuting a fraudulent home buying scheme, specifically whether the defendant:
23   "knew the scheme involved false representations."  *United States v. Nguyen*, 504 F.3d 561, 568
     (5th Cir. 2007).  *Owens* focused on the issue of whether the requisite intent to defraud had been
24   demonstrated to support mail and wire fraud convictions based on a "land 'flip' scheme."  *United
     States v. Owens*, 301 F.3d 521, 528-29 (7th Cir. 2002).  And, neither *Suarez* nor *Fullwood* reach
25   the issue of the circumstances under which a false appraisal could constitute mail fraud.  *See
     United States v. Suarez*, 215 Fed. App'x 872, 878 (11th Cir. 2007) ("We have concluded,
26   however, that the evidence is sufficient to support the bank fraud convictions.  Because Suarez
     raises no further challenges to his mail fraud convictions, we address them no further."); *United
27   States v. Fullwood*, 342 F.3d 409, 410 (5th Cir. 2003) ("at issue are two points: (1) whether the
     Government's use of a summary witness on rebuttal constitutes reversible plain error; and (2)
28   whether the district court clearly erred in enhancing the defendant's sentence").

WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:09-cv-01630-CW

context of defendants' alleged participation "in the operation or management of the . . . RICO enterprise." *Id.* at *26. *Acciard* thus does not support Plaintiffs' contention that they have pled predicate acts of mail or wire fraud in this case. *Id.*[4]

2. Confidential Witness Statements Cannot Be Used to State a RICO Claim Against Wells Fargo.

As Wells Fargo demonstrated in its Memorandum (at 12-13), Plaintiffs cannot use confidential witness statements unconnected to Plaintiffs' own claims to bolster their deficient allegations of mail and wire fraud. In response, Plaintiffs contend, without citation to any applicable authority, that their "use of confidential witness statements in their class action complaint is appropriate" because such statements "form part of the basis for Plaintiffs' belief" in making allegations of fraud on information and belief. Opp. at 16. But this circular argument proves Wells Fargo's points that (1) Plaintiffs have not pled any predicate RICO acts with the requisite particularity under Rule 9(b) in connection their own claims, and (2) the Complaint is devoid of factual allegations of any fraudulent conduct by Wells Fargo directed to Plaintiffs. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (holding that a plaintiff will be permitted to rely on an inference of fraud only when he cannot be expected to have personal knowledge of the facts underlying his claims) (citations omitted); *In re MIPS Techs., Inc.*, No. C-06-06699 RMW, 2008 WL 3823726, at *6 (N.D. Cal. Aug. 13. 2008) (dismissing confidential witness statements for lack of specificity when "the pleading rules require even more, i.e., particularized facts, these witness statements are too vague and general to be sufficient").

Further, Plaintiffs' contention that alleged confidential witness statements can be considered to support their claims is wrong. Given this, it is not surprising that Plaintiffs do not cite a single case finding that a civil RICO plaintiff can rely upon alleged confidential witness statements to plead the mail and wire fraud elements of a RICO claim. Opp. at 15-16. Plaintiffs

---

[4]   Nor do the remaining cases cited by Plaintiffs support their blanket contention. *See Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1560 (1st Cir. 1994) (finding that evidence in the record of specific auto claims made was sufficient to show predicate acts of mail or wire fraud); *First Magnus Fin. Corp. v. Star Equity Funding, L.L.C.*, No. 06-2426-JWL, 2007 U.S. Dist. LEXIS 8109, at *17-18 (D. Kan. Feb. 2, 2007) (examining whether an adequate RICO enterprise was alleged); *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984) (affirming defendants' convictions on other grounds and not revisiting the issue of appraisals).

WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:09-cv-01630-CW

suggest that the confidential witness statements are offered as support for their allegations of racketeering activity and can be considered because they show the factual basis for the fraud they allege on information and belief.  Opp. at 15-16; Compl. ¶¶ 56-65.  But whether Plaintiffs' belief has a factual basis (which they do not set forth in the Complaint) is irrelevant to whether they have pled particularized facts that support their own claims.  *Neubronner*, 6 F.3d at 672.  To survive this Motion, Plaintiffs must demonstrate that they themselves have stated a claim against Wells Fargo.  *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 733 (9th Cir. 2007).[5]  Yet, the Complaint is strikingly devoid of any allegations concerning Plaintiffs' own experience with or knowledge about any acts of mail or wire fraud whatsoever.  *Cf.* Compl. ¶¶ 56-65 *with* Opp. at 16; *see also Neubronner*, 6 F.3d at 672.  Accordingly, the confidential witness statements do not advance Plaintiffs' RICO claims.

Plaintiffs' next attempt to distinguish the requirements for use of confidential witness statements in securities actions from the use of confidential witness statements in other civil actions.  Opp. at 15-16.  This attempt fails.  While Plaintiffs are correct that securities cases are "governed by the strict pleading requirements of the Private Securities Litigation Reform Act ("PSLRA")," (Opp. at 16), they ignore the fact that mail and wire fraud must be pled with particularity under Rule 9(b)—the same pleading standard that applies in PSLRA actions.[6]  *Odom*, 486 F.3d at 554.  Indeed, in *Berson v. Applied Signal Technology, Inc.*, on which Plaintiffs rely, the Ninth Circuit examined the confidential witness statements under the very same Rule 9(b) particularity requirements that apply to Plaintiffs' mail and wire fraud allegations here.  527 F.3d 982, 985 (9th Cir. 2008).  Plaintiffs' contention that confidential witness statements can be used to

---

[5]   In an effort to evade *Lozano's* holding, Plaintiffs misstate the proposition Wells Fargo cites it for, namely that Plaintiffs cannot rely on confidential witness statements as support for their own claims because Plaintiffs can only state a claim based on conduct directed at them, not others.  504 F.3d 718, 733 (9th Cir. 2007).

[6]   Securities fraud actions must meet Rule 9(b)'s particularity requirements as well.  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005).  The PSLRA altered the pleading requirements in securities fraud actions by requiring that complaints "plead with particularity both falsity and scienter" elements.  *Id.*  Therefore, while the PSLRA altered the elements to which the particularity requirements applied, it did not change the requirements themselves.

WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:09-cv-01630-CW

support the claims of Sound Appraisal and Savage Appraisal—and can further be considered separate predicate acts under RICO—is thus without merit.

Even if this Court were to consider the confidential witness statements, the allegations still do not establish the particularized facts of who, what, when, where, and why necessary to state claims of mail or wire fraud. *See Edwards*, 356 F.3d at 1066; *Berson*, 527 F.3d at 985 (making specific allegations about the confidential witnesses former employment with defendant); *In re Daou Sys., Inc.* 411 F.3d 1006, 1016 (9th Cir. 2005) (describing the job titles, responsibilities, and supervisors of confidential witnesses employed by defendant). To the contrary, each of the nine alleged confidential witness statements are deficient under Rule 9(b) as not a single statement includes particularized information about Plaintiffs' claims, nevermind who at Wells Fargo the alleged confidential witness communicated with, when the alleged blacklisting occurred, how the alleged confidential witness was harmed (*e.g.*, whether the alleged confidential witness lost business as a result of the blacklisting), what was specifically communicated, why the alleged communication occurred, or whether the communication occurred through the mail and/or wires. Compl. ¶¶ 57-65. Indeed, four out of the nine statements do not even allege that the confidential witness was actually "blacklisted." *Id.* ¶¶ 60, 61, 62, 64. Under these circumstances, Plaintiffs' confidential witness allegations cannot suffice as factual allegations sufficient to plead mail or wire fraud by Wells Fargo necessary to state a RICO claim.

**B.    The "Wells Fargo Brokerage Enterprise" Is Not a Cognizable RICO Enterprise.**

As Wells Fargo demonstrated in its Memorandum (at 15-17), the alleged "Wells Fargo Brokerage Enterprise" is not cognizable, because Plaintiffs plead no facts establishing that the thousands of brokers across the country worked together toward a common purpose. Mem. at 15; Compl. ¶¶ 88-93. Rather than respond to Wells Fargo's "common purpose argument" and the vagueness of their allegations, Plaintiffs continue to rely on conclusory and inconsistent allegations insufficient to plead a valid RICO enterprise. Opp. at 11-12, 16-19.

The United States Supreme Court recently clarified the requirements for an association-in-fact enterprise, stating that there must be three structural features: "a purpose, relationships among

7

those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 129 S. Ct. 2237, 2244 (2009).  The Court explained that a common purpose can be shown only if members of the group share the "common purpose of engaging in a course of conduct." *Id.*  It went on to state that an enterprise requires evidence of "interpersonal relationships" showing that the alleged members of the enterprise have "joined together" in order to pursue a "certain object" or "course of conduct." *Id.*  Plaintiffs' allegations concerning an alleged brokerage enterprise do not meet these requirements, because the "Wells Fargo Brokerage Enterprise" lumps together, in a single undifferentiated mass, all mortgage brokers, nationwide, who contracted with Wells Fargo at any time, without identifying a single mortgage broker, or explaining any relationship those brokers may have had with each other. *See* Mem. at 15-17; Compl. ¶ 88.

In support of their claims, Plaintiffs erroneously cite cases with allegations that include at least one named individual as part of the enterprise or that plead specific facts about the alleged relationships among parties to the enterprise.  Opp. at 17-18.[7]  *But see Smith v. Jenkins*, 626 F. Supp. 2d 155, 172 (D. Mass. 2009) (finding no association-in-fact enterprise of defendant real estate companies and mortgage brokers when there "is no indication as to who are the proper RICO defendants, or what exactly is the RICO enterprise [so the] reader is left to guess among the cast of players as to which is which").  By contrast to the requirements set forth in *Boyle*— however, Plaintiffs here make no allegations concerning the roles of the unidentified brokers in the alleged enterprise, Wells Fargo's relationship with those brokers, or the brokers' relationships with each other.  Moreover, Plaintiffs mistakenly argue that the number of defendants at the hub of the conspiracy is the key to what constitutes a hub-and-spoke conspiracy, although the cases that they cite clearly focus on whether there is knowledge of, or a connection between, the various

---

[7]   *See In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig.* ("*In re Countrywide*"), 601 F. Supp. 2d 1201, 1212 (S.D. Cal. 2009) (including individual named brokerage companies in enterprise allegations); *In re Nat'l W. Life Ins. Deferred Annuities Litig., No. 05-CV-1018-JLS (LSP)*, 2009 U.S. Dist. LEXIS 62949, at *11 (S.D. Cal. 2009) (alleging that the enterprise members' "relationship involves more than mere sales, as Defendant exerts control over NMOs and agents through, *inter alia*, agent screening, training, marketing, bonuses, commissions, and performance reviews" and "Defendant works with NMOs and agents to ensure that its products get sold through advisory boards and other solicited input").

WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:09-cv-01630-CW

parties constituting the spokes. *United States v. Chandler*, 388 F.3d 796, 807 (11th Cir. 2004); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002).

Even if a hub-and-spoke conspiracy were permissible, as Plaintiffs contend, their allegations are far too nebulous to satisfy Rule 8's requirement that factual allegations be independently plausible to withstand a Rule 12(b)(6) motion. *Iqbal*, 129 S. Ct. at 1952; *Twombly*, 550 U.S. at 555. Taken as pled, Plaintiffs' allegations simply make no sense. Unidentified brokers nationwide, all of whom compete with each other for lenders' business, have no incentive to enter into any agreement to "blacklist" appraisers or to act together in a conspiracy to do so. Indeed, the incentive that Plaintiffs contend brokers have—"to service clients and maximize their profits" (Opp. at 12)—shows how nonsensical it would be for brokers to enter into any "enterprise" with a single mortgage lender and one of its affiliated appraisal management companies to blacklist appraisers. Further, Plaintiffs' bald allegation that Wells Fargo "pressure[s] . . . independent mortgage brokers to use Rels for their appraisal needs or causes brokers to use Rels by default" (Opp. at 11) is inconsistent with the notion that these same brokers have entered into an agreement with Wells Fargo and Rels to use (or not use) certain appraisers. Such a logical leap, unsupported by facts, is implausible. *Iqbal*, 129 St.Ct. at 1952. Compl. ¶¶ 88-93. Plaintiffs' alleged "Wells Fargo Brokerage Enterprise" thus cannot withstand scrutiny, and the RICO claims based on that enterprise should be dismissed.

### C.   Plaintiffs Do Not Show How the Alleged RICO Enterprises Proximately Harmed Them.

Plaintiffs' bald contention that "the proximate cause [for their RICO injury] is straightforward – Defendants refused to deal with Plaintiffs solely because Plaintiffs would not falsify their appraisal reports in support of Defendants' scheme" (Opp. at 20) – is no response to Wells Fargo's causation argument. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460-61 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to plaintiff's injuries."); *Twombly*, 550 U.S. at 555. Proximate harm requires a showing of a direct relationship between "the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268-69 (1992).

9

Here, the injurious conduct alleged is mail or wire fraud.  But Plaintiffs have not tied the alleged predicate acts of mail or wire fraud (which as detailed above are not pled with particularity in any event) to their alleged loss of income, and so have not plead proximate causation necessary to state a RICO claim.  *In re Actimmune Mktg. Litig.,* 614 F. Supp. 2d 1037, 1052-53 (N.D. Cal. 2009) (dismissing civil RICO claims because plaintiffs could not establish the relationship between the asserted injury and injurious conduct due to the lack of specificity of pleading concerning misrepresentations); *Savage v. Council on American-Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 WL 2951281, at *13 (N.D. Cal. July 25, 2008).[8]

> **D.     Plaintiffs Fail To State a Claim for RICO Conspiracy Under Subsection 1962(d).**

Plaintiffs contend that they have stated "numerous allegations that support a [civil RICO] conspiracy claim" under Subsection 1962(d).  Opp. at 15, n.5.  But, as Wells Fargo demonstrated in its Memorandum (at 14, n.7), Plaintiffs make only a single allegation concerning Subsection 1962(d) in the Complaint.  That conclusory allegation is that, "[a]t all relevant times, in violation of 18 U.S.C. § 1962(c), the Defendants conducted the affairs of certain association-in-fact enterprises identified herein, the affairs of which affected interstate commerce through a pattern of racketeering activity, and engaged in a conspiracy in violation of 1962(d)."  Compl. ¶ 87.  This is not enough to plead a RICO conspiracy claim, because it is nothing more than a "bare recitation of the elements of a RICO claim under Subsection 1962(d)."  Mem. at 14, n.7.  Such a bare recitation falls well-short of pleading the factual allegations necessary to state a RICO conspiracy claim at the pleadings stage.  *Twombly*, 550 U.S. at 555; *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 775 (9th Cir. 2002).  In any event, because Plaintiffs have not sufficiently pled a substantive violation of RICO, any claim under subsection 1962(d) also must fail.  *See* Section II.A-B *supra*; *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

---

[8] Plaintiffs' reliance on *Bridge v. Phoenix Bond & Indemnity Co.* is unavailing as the focus of that case was upon whether there is a reliance element in a civil RICO claim, not upon the well-settled proximate cause requirement.  *Bridge v. Phoenix Bond & Indemnity Co.,* 128 S. Ct. 2131, 2141 (2008); Opp. at 20-21.  Indeed, the Supreme Court expressly stated that RICO requires proof of proximate causation.  *Bridge*, 128 S. Ct. at 2144.

WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:09-cv-01630-CW

**III.    Plaintiffs Fail to State a Claim for Interference with Prospective Economic Advantage.**

    **A.    Plaintiffs Do Not Allege an "Independent Wrong."**

Finally, as Wells Fargo demonstrated in its Memorandum (at 22-25), the Complaint fails to state a claim for interference with prospective economic advantage for numerous reasons. Despite Plaintiffs' contention that they have pled "conduct that is independently wrongful" (Opp. at 21), Plaintiffs do not point to any factual allegation in the Complaint that the conduct alleged to constitute interference "was unlawful for reasons other than that it interfered with a prospective advantage." *Lovesy v. Armed Forces Benefit Ass'n.*, No. C 07-2745 SBA, 2008 WL 696991, at *11 (N.D. Cal. Mar. 13, 2008); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (2003); *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392-93 (1995). Rather, Plaintiffs contend that "the wrongful conduct is not only the RICO violations but also the violations of USPAP, which have been adopted by California through regulations." Opp. at 21. But this contention cannot be squared with Plaintiffs' allegations in the Complaint. *See* Compl. ¶¶ 126-130. There, Plaintiffs merely allege that "Defendants knew about [Plaintiffs'] relationships [with mortgage brokers and lenders] and intentionally and successfully engaged in the conduct alleged in this Complaint for the purpose of disrupting those relationships." *Id.* ¶ 129. They go on to contend that "Defendants' unlawful conduct has directly and proximately caused Plaintiffs . . . to be injured." *Id.* ¶ 130. Such conclusory allegations are not sufficient to state an intentional interference claim. *Lovesy*, 2008 WL 696991, at *12 (allegations that "Defendants' unidentified actions were wrongful in that they constituted a fraud upon [persons] who purchased the policies is insufficient to allege an independently wrongful act. Plaintiffs must, at the very least, identify the wrongful actions that allegedly constitute fraud") (internal punctuation and citation omitted); *Brunelle v. Compucom Sys., Inc.*, No. 06CV2755 JLS (CAB), 2008 WL 357376, at * 7 (S.D. Cal. Feb. 8, 2008) ("At trial, plaintiff would have to plead *and prove* as part of its case-in-chief that the defendant…engaged in conduct that was wrongful by some legal measure other than the fact of interference itself") (internal quotations and citation omitted).

WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:09-cv-01630-CW

Regardless, the supposed RICO and USPAP violations cannot constitute independent wrongs sufficient to sustain their intentional interference claims in any event.  As to the Plaintiffs' RICO claims, it is well-settled that defective claims for a statutory violation cannot sustain an interference claim as a matter of law.  *Jensen Enters., Inc. v. Oldcastle Precast, Inc.*, No. C 06-247 SI, 2009 WL 440492, at *8 (N.D. Cal. Feb. 23, 2009) (dismissing a tortious interference claim that was dependent on a failed antitrust claim); *Aho Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-cv-04133-SBA, 2008 WL 4830708, at *2-3 (N.D. Cal. Nov. 6, 2008) (dismissing claim for interference where the underlying UCL claims fail).  Moreover, to the extent that Plaintiffs' interference claims are based on an alleged "fraudulent scheme" that violates RICO (Opp. at 21), the allegations do not meet the pleading requirements of Rule 9(b), which apply to intentional interference claims grounded in allegedly fraudulent conduct.  *Terarecon, Inc. v. Fovia, Inc.*, No. C 05-4407 CW, 2006 WL 1867734, at *7-8 (N.D. Cal. July 6, 2006) (hereinafter "*Terarecon I*") (dismissing claim for intentional interference based on allegations that defendants made false and misleading statements because the fraudulent conduct was not alleged with particularity); *Terarecon, Inc. v. Fovia, Inc.*, No. C 05-4407 CW, 2006 WL 2691405, at *2 (N.D. Cal. Sept. 20, 2006) (hereinafter "*Terarecon II*") (same).  As discussed in detail above and in the Memorandum (at 8-12), Plaintiffs' allegations concerning fraudulent conduct do not pass muster, because they contain no factual allegations of specific fraudulent conduct engaged in by Wells Fargo or about misrepresentations or omissions purportedly made by it.  *Terarecon I*, 2006 WL 1867734, at *7-8; *Vess*, 317 F.3d at 1106.

And, as to the USPAP, Plaintiffs have not identified how such violations may have occurred or how the alleged violations constitute "independently actionable conduct."  *Korea Supply Co.*, 29 Cal. 4th at 1158-59; *Della Penna*, 11 Cal. 4th at 392-93.  Instead, Plaintiffs make much of the fact that in *Korea Supply* the California Supreme Court allowed an interference claim to go forward based on an alleged violation of the Foreign Corrupt Practices Act even though that statute does not contain a private right of action.  Opp. at 22.  But Plaintiffs' reliance on *Korea Supply* is a red herring because, in that case, the plaintiffs demonstrated that the conduct was

WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:09-cv-01630-CW

independently actionable through criminal enforcement. *Korea Supply*, 29 Cal. 4th at 1158-59. Moreover, applying the independently actionable requirement established in *Korea Supply* to an alleged violation of trade association rules, the California Court of Appeal for the Second District found that "[t]his necessarily requires that the rules or standards provide for, or give rise to, a sanction or means of enforcement for a violation of the particular rule or standard that allegedly makes the defendant's conduct wrongful." *Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.*, 138 Cal. App. 4th 1215, 1223 (Cal. Ct. App. 2006); *see also CRST Van Expedited, Inc. v. Werner Enters., Inc.,* 479 F.3d 1099, 1109 (9th Cir. 2007) (ruling "violation of trade rules [is] not independently actionable conduct and therefore, not an independently wrongful act"). Plaintiffs make no allegations that a violation of the USPAP is independently actionable or how the USPAP is enforced, and so cannot sustain their interference claims by reference to the USPAP. *Stevenson Real Estate Servs., Inc.*, 138 Cal App. 4th at 1224.

**B.      Plaintiffs Do Not Identify Any Third-Party Relationship That Was Disrupted.**

Plaintiffs' interference claims are also deficient because Plaintiffs have not identified any third parties with whom their business relationships were disrupted by Wells Fargo. *Stevenson Real Estate Servs., Inc.*, 138 Cal App. 4th at 1220. Oddly, Plaintiffs contend in the Opposition that their Complaint "specif[ies] that Defendants' fraudulent scheme made it impossible for blacklisted appraisers such as themselves to obtain appraisal work from *any mortgage lender where Wells Fargo is the lender*." Opp. at 21 (emphasis added). Presumably, Plaintiffs mean to argue that their allegations stating that "independent loan mortgage brokers, which also hire appraisers, *may* refuse to use blacklisted appraisers if Wells Fargo is the lender" and that "members have economic relationships with mortgage brokers and mortgage lenders [and that] Defendants knew about those relationships" are sufficient to sustain their claim. *See* Compl. ¶¶ 8, 129 (emphasis added) (cited at Opp. at 21). Yet, the only disrupted relationship that Plaintiffs have identified with specificity in those allegations is their relationship with Wells Fargo itself. It is unquestionable that a claim for interference with economic advantage must concern disruption of the relationship between a plaintiff and an identified party *other than* the defendant in order to

WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:09-cv-01630-CW

state a claim.  *Korea Supply Co.*, 29 Cal. 4th at 1153-54; *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 527-28 (Cal. Ct. App. 1996) (finding interference with the market to be insufficient to support a claim; rather, plaintiff needed to show an interference with an identifiable buyer); *Kruse v. Bank of Am.*, 248 Cal. App. 3d 38, 66 (Cal. Ct. App. 1988) (requiring a showing of interference with plaintiff's business relationship with a third party).

Plaintiffs' reference to *Certain Underwriters at Lloyd's v. Real Estate Professionals Insurance Co.* compels no different conclusion.  Opp. at 21.  There, unlike here, the claimant made allegations about his expected business relationship "to serve as its exclusive defense counsel" for an <u>identified</u> third-party insurance group for real estate professionals where the insurance group had contracted to "provide all insurance litigation defense" for the "insureds."  *Certain Underwriters at Lloyd's v. Real Estate Prof'ls Ins. Co.*, No. CV 06-4783 CAS (JWJx), 2007 U.S. Dist. LEXIS 88241, at *19-20 (C.D. Cal. 2007) (emphasis added).  Further, the plaintiff in *Certain Underwriters* made allegations that he had been promised a certain percentage of proceeds from premium sales to those premium holders he was to represent.  *Id.* at *19-20.  The Court permitted the interference claim to go forward only where it was "predicated on harm to [plaintiff's] relationships with *specific* insureds on the policies," but not his alleged relationships with "the real estate, mortgage and/or home industry" in general.  *Certain Underwriters*, 2007 U.S. Dist. LEXIS 88241, at *22-23, 57; Opp at 21.  Plaintiffs pointedly omit the word "specific" from the finding that an economic relationship was sufficiently pled in *Certain Underwriters*.  Opp. at 21.  Plaintiffs' claims for intentional interference with prospective economic advantage should be dismissed, because Plaintiffs do not identify the specific third-party relationships allegedly disrupted by Wells Fargo's conduct.

## CONCLUSION

For all of the foregoing reasons, and the arguments set forth in Wells Fargo's Opening Memorandum, Plaintiffs have failed to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6).  As such, this Court should dismiss Plaintiffs' claims against Wells Fargo with prejudice.

14

WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:09-cv-01630-CW

1

2

Respectfully submitted

3    Dated:  September 3, 2009          By   /S/   Brooks R. Brown
                                       :     BROOKS R. BROWN
4                                            bbrown@goodwinprocter.com
                                             **GOODWIN PROCTER** **LLP**
5                                            10250 Constellation Blvd.
                                             Los Angeles, California  90067
6                                            Tel.:  310.788.5100
                                             Fax:  310.286.0992
7
                                             ROBERT B. BADER
8                                            rbader@goodwinprocter.com
                                             **GOODWIN PROCTER** **LLP**
9                                            Three Embarcadero Center, 24th Floor
                                             San Francisco, CA  94111
10                                           Tel.:  415.733.6000
                                             Fax:  415.677.9041
11
                                             Attorneys for Defendant:
12                                           *Wells Fargo Bank N.A.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

15

WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:09-cv-01630-CW

1  | **PROOF OF SERVICE**

2  |       I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 10250 Constellation Blvd., Los Angeles, CA  90067.

3  |

4  |       On **September 3, 2009**, I served the following documents by placing a true copy thereof in a sealed envelope(s) on the persons below as follows:

5  |

6  | **WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT**

7  |

| | |
|---|---|
| Jeff D. Friedman, Esq.<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>714 Hearst Avenue, Suite 202<br>Berkeley, CA 94710 | Counsel for Plaintiffs: *Sound Appraisal* and *Savage Appraisal Services, Inc.*<br>Tel. 510.725.3000<br>Fax. 510.725.3001<br>jeff@hbsslaw.com |
| Steve W. Berman, Esq.<br>Thomas E. Loeser, Esq.<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>1301 Fifth Avenue, Suite 2900<br>Seattle, WA 98101 | Counsel for Plaintiffs: *Sound Appraisal* and *Savage Appraisal Services, Inc.*<br>Tel. 206.623.7292<br>Fax. 206.623.0594<br>steve@hbsslaw.com<br>toml@hbsslaw.com |
| Gayle M. Athanacio, Esq.<br>SONNENSCHEIN NATH & ROSENTHAL LLP<br>525 Market Street, 26th Floor<br>San Francisco, CA  94105-2708 | Counsel for Defendant: *Valuation Information Technology d/b/a RELS Valuation*<br>Tel. 415.882.5000<br>Fax. 415.882.0300<br>gathanacio@sonnenschein.com |
| Charles A. Newman, Esq.<br>SONNENSCHEIN NATH & ROSENTHAL LLP<br>One Metropolitan Square, Suite 3000<br>St. Louis, MO  63102 | Counsel for Defendant: *Valuation Information Technology d/b/a RELS Valuation*<br>Tel. 314.241.1800<br>Fax. 314.259.5959<br>cnewman@sonnenschein.com |
| Elizabeth T. Ferrick, Esq.<br>SONNENSCHEIN NATH & ROSENTHAL LLP<br>One Metropolitan Square, Suite 3000<br>St. Louis, MO  63102<br>***NOT- CM/ECF yet but admitted PHV*** | Counsel for Defendant: *Valuation Information Technology d/b/a RELS Valuation*<br>Tel. 314.241.1800<br>Fax. 314.259.5959<br>eferrick@sonnenschein.com |

☑     (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with this firm's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am a resident or employed in the county where the mailing occurred.  The envelope or package was placed in the mail at Los Angeles, California.

1

WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:09-cv-01630-CW

☑      (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

☐      (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express , an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy  of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

☐      (MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed and provided them to a professional messenger service for service.  A separate Personal Proof of Service provided by the professional messenger service will be filed under separate cover.

☐      (FACSIMILE) Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☐      (E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

Executed on **September 3, 2009**, at Los Angeles, California.

_____          _____
              Britani N. Selzler                                              (Signature)

WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:09-cv-01630-CW