1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SOUND APPRAISAL and SAVAGE APPRAISAL
SERVICES, INC., on behalf of
themselves and all others similarly
situated,

        Plaintiffs,

    v.

WELLS FARGO BANK, N.A. and VALUATION
INFORMATION TECHNOLOGY, LLC, d/b/a
RELS VALUATION,

        Defendants.

_____/

No. C 09-01630 CW

ORDER GRANTING
DEFENDANTS' MOTIONS
TO DISMISS

    Plaintiffs Sound Appraisal and Savage Appraisal Services,

Inc., on behalf of themselves and all others similarly situated,

charge Defendants Wells Fargo Bank, N.A. (Wells Fargo) and

Valuation Information Technology, LLC, d/b/a Rels Valuation (Rels)

with violating the federal Racketeer Influenced and Corrupt

Practices Act (RICO) and interfering with Plaintiffs' prospective

economic advantage.[1]  Defendants move separately to dismiss

Plaintiffs' complaint, arguing that Plaintiffs failed to (1) state

---

[1]Plaintiffs' complaint includes a claim for injunctive relief
under California's Unfair Competition Law, Cal. Bus. & Prof. Code
§ 17200 et seq.; however, they do not oppose dismissing this claim
with prejudice.

their RICO claim with particularity, (2) allege a RICO pattern of racketeering activity, (3) allege a cognizable RICO enterprise that proximately caused them harm and (4) state a claim for intentional interference with prospective economic advantage.  Plaintiffs oppose the motions.  The matter was heard on September 17, 2009. Having considered oral argument and all of the papers filed by the parties, the Court grants Defendants' motions to dismiss.

BACKGROUND

The following allegations are taken from Plaintiffs' complaint.  Plaintiff Sound Appraisal is a sole proprietorship with its principal place of business in Puyallup, Washington.  Plaintiff Savage Appraisal Services, Inc. is an S corporation with its principal place of business in Vail, Colorado.  Sound Appraisal and Savage Appraisal provide residential real estate appraisals to mortgage brokers and mortgage lenders.

Defendant Wells Fargo is a national banking association chartered in Sioux Falls, South Dakota and headquartered in San Francisco, California.  It is a diversified financial services company that provides retail and business banking, insurance, investments, mortgages and consumer finance across the United States.  Wells Fargo provides residential mortgages through its division, Wells Fargo Home Mortgage.[2]  It is the nation's largest originator and second largest servicer of residential mortgages.

Defendant Rels is an Iowa limited liability company headquartered in Minnetonka, Minnesota.  Rels is a "joint venture" between First American Solutions, a subsidiary of First American

_____

[2]Collectively, these entities will be referred to as Wells Fargo.

2

United States District Court
For the Northern District of California

Corporation, and Wells Fargo Foothill, a subsidiary of Wells Fargo & Co.  Complaint ¶ 18.  Rels provides "real estate settlement services" including property appraisals.  Id.

The work of an appraiser is to provide an unbiased assessment of a property's value.  Appraisers are commonly retained by mortgage brokers and mortgage lenders in order to value the property that will be used as collateral for a loan.  Appraisers either work "in house" within a broker's or lender's business, or as independent contractors.  In this case, Plaintiffs were hired by Defendants as independent contractors.

The federal Financial Institutions and Reform Act of 1989 recognizes the Uniform Standards of Professional Appraisal Practice (USPAP) as the generally accepted appraisal standards and requires USPAP compliance for appraisers in federally related transactions.[3] State appraiser certification and licensing boards; federal, state, and local agencies; and appraisal trade associations require compliance with USPAP.  According to USPAP, "[a]n appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interests."  USPAP Ethics Rule (Conduct).  An appraiser "must not perform as an advocate for any party or issue" or "accept an assignment that includes the reporting of predetermined opinions and conclusions."  Id.

_____

[3]A federally related transaction is any real estate financial transaction that a federal agency or any federally regulated institution engages in or contracts for and that requires the services of an appraiser.  See 12 C.F.R § 34.42(f); 12 C.F.R. § 225.62(f); 12 C.F.R. § 323.2(f); 12 C.F.R § 564.2(f); 12 C.F.R. § 722.2(e).

United States District Court
For the Northern District of California

In 2004, Wells Fargo changed the way it hired appraisers. Whereas it used to contact appraisers directly, it began contacting appraisers through an affiliate appraiser management company, ValueIT. ValueIT was an appraisal clearing-house that contracted with independent appraisers to meet the needs of Wells Fargo and other lenders. ValueIT eventually changed its name to Rels Valuation, a Defendant in this case. Plaintiffs claim that "Rels is a 'captive' puppet of Wells Fargo, either by virtue of partial ownership by a common parent or economic power as its largest client." Id. ¶ 39.

Plaintiffs allege that Wells Fargo is more interested in having a property appraised for a certain amount than it is in determining whether an appraisal is fair and accurate and prepared in accordance with USPAP standards. Id. ¶ 35. Plaintiffs allege, "If an appraiser does not 'play ball' and produce a report affirming the property value or the parameters that Wells Fargo expects or wants, Wells Fargo, through Rels Valuation, suspends the appraiser or removes the appraiser from the list of preferred appraisers and, in essence, 'blacklists' the appraiser." Id. ¶ 37.

In June, 2007, Sound Appraisal received a request from Wells Fargo through Rels to appraise a home in Enumclaw, Washington. After Sound Appraisal's sole proprietor, Don Pearsall, submitted the completed appraisal, Rels contacted Pearsall and "asked that he alter the Uniform Residential Appraisal Report he submitted." Id. ¶ 44.[4] Pearsall refused to alter the report. Rels' area manager, Randall Pierzina, told Pearsall that Pearsall "took USPAP too

---

[4]The complaint does not allege what information Rels asked Pearsall to alter.

4

seriously" and that Pearsall was going to "kill the deal."  Id. ¶ 55.

Prior to this incident, approximately twenty-five to thirty-five percent of Sound Appraisal's business came from Defendants. After this incident, Sound Appraisal no longer received appraisal requests from them.  When Pearsall inquired about the sudden decline in work, Pierzino stated that Pearsall had been "suspended and was no longer an approved appraiser for Rels Valuation."  Id. ¶ 47.

On April 8, 2009, Pearsall received a phone call from Rels offering an assignment.  Pearsall responded, "I would love to take the job, but aren't I on your blacklist?"  The Rels employee put Pearsall on hold to check, and then the employee said, "I'm sorry, I wasn't supposed to contact you."  Id. ¶ 48.  Sound Appraisal alleges that this confirmed the existence of the blacklist.  Id. ¶ 49.

Savage Appraisals has been doing appraisals for Rels for the past twelve years.  In January, 2009, Savage performed two such appraisal assignments for Rels.  After providing these appraisals to Rels, a "Collateral Compliance Reviewer" for Rels emailed Savage and included information "to support an increased value" of the appraised property.  Id. ¶ 52.  Savage then reviewed its appraisal and determined that no such increased valuation was appropriate. The next month, Savage received a letter from Rels, which stated that he had been removed from its approved panel of appraisers. The letter did not provide an explanation for the removal.

The complaint also contains nine statements by confidential witnesses who are appraisers in Arizona, Nevada, Washington,

5

**United States District Court**
For the Northern District of California

Pennsylvania, Illinois, Virginia, Indiana and Oregon.  These witnesses allege that Rels stopped hiring them because they refused to alter appraisals upon Rels' request.

On April 14, 2009, Plaintiffs filed the complaint in this case.  Plaintiffs allege that, in an effort to increase market share in the home mortgage business, Defendant Wells Fargo has engaged in a pattern and practice of pressuring appraisers to write appraisals designed to justify the loan even if the appraisal violates USPAP.  Id. ¶ 35.  Plaintiffs also claim that Defendants "utilize a host of indirect methods to communicate to the appraiser the value needed to fund the loan, and the value the appraiser is expected to 'hit.'"  Id. ¶ 36.  For example, Rels' appraisal order form indicates the "Borrower Estimated Value."  Plaintiffs claim that this reflects the value that the appraiser is expected to meet or exceed in the appraisal.

In sum, Plaintiffs allege that Defendants' conduct violated RICO and intentionally interfered with their prospective economic advantage.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe

6

United States District Court
For the Northern District of California

them in the light most favorable to the plaintiff.  <u>NL Indus., Inc.</u> <u>v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.  <u>Ashkcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing <u>Twombly</u>, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading.  <u>Id.</u> at 296-97.

DISCUSSION

I.   RICO

To state a claim for relief in a private RICO action, Plaintiffs must allege the existence of four essential elements. Plaintiffs must show (1) a pattern of racketeering activity, (2) the existence of an enterprise engaged in or affecting interstate or foreign commerce, (3) a nexus between the pattern of racketeering activity and the enterprise and (4) an injury to their business or property by reason of the above.  <u>Sedima S.P.R.L. v.</u>

7

United States District Court
For the Northern District of California

1  <u>Imrex Company, Inc. et al.,</u> 473 U.S. 479 (1985).  The racketeering

2  activities upon which Plaintiffs rely are the federal offenses of

3  mail fraud and wire fraud.  "A wire fraud violation consists of

4  (1) the formation of a scheme or artifice to defraud; (2) use of

5  the United States wires or causing a use of the United States wires

6  in furtherance of the scheme; and (3) specific intent to deceive or

7  defraud."  <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 554 (9th Cir.

8  2008) (internal quotation marks omitted); 18 U.S.C. § 1343.  The

9  elements of mail fraud differ only in that they involve the use of

10 the United States mails rather than wires.  <u>See</u> 18 U.S.C. § 1341.

11 All such allegations must be plead with particularity.  <u>Moore v.</u>

12 <u>Kayport Package Express, Inc.</u>, 885 F.2d 531, 541 (9th Cir. 1989).

13      A.   Pattern of Racketeering Activity

14      Plaintiffs claim that Wells Fargo and Rels utilized fraudulent

15 appraisals to carry out their scheme to increase their market share

16 and make as many loans as possible.  Plaintiffs allege that Wells

17 Fargo and Rels "suspended or removed [appraisers] from the approved

18 appraiser list" and that they attempted to "pressure appraisers to

19 change the values in their appraisal reports."  Complaint ¶ 108.

20 However, Plaintiffs have not alleged how these allegations

21 constitute fraudulent conduct or misrepresentations or "set forth

22 what is false or misleading about a statement, and why it is

23 false."  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th

24 Cir. 2003) (citation and quotation marks omitted).  Moreover,

25 Plaintiffs fail to allege the specific role Wells Fargo purportedly

26 played in the alleged fraudulent scheme.  <u>See</u> <u>Swartz v. KPMG LLP</u>,

27 476 F.3d 756, 764-65 (9th Cir. 2007) (when suing multiple

28 defendants, a plaintiff must "inform each defendant separately of

the allegations surrounding his alleged participation in the fraud.").

Plaintiffs have not alleged with particularity any misrepresentations or false statements contained in an appraisal report that support the allegation of a scheme to defraud furthered by an act of mail or wire fraud actionable against Defendants. Specifically, Plaintiffs fail to (1) identify any false statement contained in any appraisal, (2) indicate who performed any false appraisals, (3) identify any of the "who, what, where, or why" of any alleged false statement with respect to any appraisal or (4) tie any alleged misrepresentations by Defendants to any appraisals.

Plaintiffs attempt to bolster their complaint with statements from confidential witnesses.  Plaintiffs argue that these statements "form part of the basis for Plaintiffs' belief" that Defendants committed mail and wire fraud.  Opposition at 16.  These statements, likewise, do not allege particularized facts necessary to state claims of a scheme to defraud using the mail or wires.

Therefore, Plaintiffs have not plead a single predicate act, let alone a pattern of racketeering activity.

B.   Conspiracy

Plaintiffs' complaint also lacks factual allegations to establish the elements of a RICO conspiracy under 18 U.S.C. § 1962(d).  Plaintiffs do not allege an agreement to violate RICO by each Defendant.  The complaint does not state that Defendants agreed to participate in any improper pressuring or blacklisting of its appraisers.  The mere affiliation of Rels and Wells Fargo does not indicate any agreement unlawfully to pressure or blacklist

9

appraisers.  As they stand, Plaintiffs' RICO conspiracy allegations are conclusory and do not support their § 1962(d) claim.

        C.    Enterprise

        An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct."  United States v. Turkette, 452 U.S. 576, 583 (1981).  "To establish the existence of such an enterprise, a plaintiff must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'"  Odom, 486 F.3d at 552 (quoting Turkette, 452 U.S. at 583).

        Plaintiffs allege two alternative enterprises: the Wells Fargo Enterprise and the Wells Fargo Brokerage Enterprise.  Plaintiffs allege that the Wells Fargo Enterprise consists of "(1) Wells Fargo and (2) Wells Fargo's subsidiaries, including Rels Valuation, and loan closing services subsidiaries."  Complaint ¶ 95.  Wells Fargo does not dispute that the Wells Fargo Enterprise constitutes a cognizable RICO enterprise.

        Plaintiffs allege that the Wells Fargo Brokerage Enterprise consists of: "(1) Wells Fargo, including its Rels Valuation and other loan closing services affiliates, and (2) mortgage brokers not named as defendants herein who have contracts with Wells Fargo pursuant to which they sell, arrange, promote, or otherwise assist Wells Fargo in directing borrowers into loans issued by Wells Fargo."  Complaint ¶ 88.  Wells Fargo argues that the Wells Fargo

United States District Court
For the Northern District of California

Brokerage Enterprise is not cognizable because Plaintiffs do not plead facts demonstrating that the thousands of brokers across the country worked together toward a common purpose.  The Court agrees.  Plaintiffs have not alleged facts that, if proved, provide sufficient "evidence that the various associates function as a continuing unit;" or that Defendants and brokers are part of an "ongoing organization."  <u>Odom</u>, 486 F.3d at 552.  Rather, the "Wells Fargo Brokerage Enterprise" lumps together, in a single group, all mortgage brokers nation-wide who contracted with Wells Fargo at any time, without identifying a single mortgage broker or explaining the relationships these brokers may have with each other.  Complaint ¶ 88.  Plaintiffs' reliance on <u>In re Countrywide Fin. Corp. Mortg. Mktg & Sales Prac. Litig.</u>, 601 F. Supp. 2d 1201, 1212-13 (S.D. Cal. 2009), is misplaced.  There, the plaintiffs actually identified the individuals who made up the enterprise.  Here, Plaintiffs' allegations with respect to this enterprise are vague and overbroad.  Accordingly, the Wells Fargo Brokerage Enterprise does not constitute a valid RICO enterprise.

D.   Proximate Causation

To show an injury under RICO, a plaintiff must show a concrete financial loss, not mere injury to a valuable intangible property interest.  <u>Oscar v. Univ. Students Coop. Ass'n</u>, 965 F.2d 783, 785 (9th Cir. 1992); <u>Fireman's Fund Ins. Co. v. Stites</u>, 258 F.3d 1016, 1021 (9th Cir. 2001).  The Supreme Court has stated that there must be "some direct relation between the injury asserted and the injurious conduct alleged.  Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too

United States District Court
For the Northern District of California

remote a distance to recover." Holmes v. Sec. Investor Protection Corp., 503 U.S. 258, 268-69 (1992). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to plaintiff's injuries." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 460-61 (2006).

Plaintiffs argue that Defendants' refusal to "deal with Plaintiffs solely because Plaintiffs would not falsify their appraisal reports in support of Defendants' scheme" constitutes a direct injury to Plaintiffs. Opposition at 20. Although Plaintiffs have not adequately plead the underlying fraud with specificity, their proximate causation theory is adequate. Defendants' alleged scheme to obtain fraudulent appraisals and Plaintiffs' refusal to engage in that scheme led directly to an abrupt end in the business relationship between Plaintiffs and Defendants. In Mendoza v. Zirkle Fruit Co., 301 F.3d 1163 (9th Cir. 2002), a class of agricultural laborers alleged that their employers had depressed their wages by illegally hiring undocumented workers at below-market wages. The agricultural workers alleged an injury to their property interest in the "legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes." See id. at 1168 n.4. The court held that this property interest was sufficient to provide standing under RICO. See id. at 1168. Similarly, Plaintiffs have alleged just such an interference with their business relations.

II.  Interference with Prospective Economic Advantage

Plaintiffs allege intentional interference with prospective economic advantage (IIPEA) against Defendants.

12

United States District Court
For the Northern District of California

To state a claim for the tort of IIPEA, Plaintiffs must show, for each Defendant: (1) an economic relationship between Plaintiffs and a third party containing the probability for future economic benefit for Plaintiffs; (2) Defendant's knowledge of this relationship; (3) intentional acts by Defendant designed to disrupt the relationship; (4) actual disruption of the relationship; (5) damages proximately caused by Defendant's acts; and (6) that Defendant's acts were wrongful by some legal measure other than the fact of the interference itself. <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1153-54 (2003).

Defendant Rels argues that the IIPEA claims should be dismissed against it because it does not have a sufficient nexus to California for California law to apply to it. Rels is an Iowa limited liability company with its principal place of business in Minnesota. Plaintiff Sound Appraisal is a sole proprietorship with its principal place of business in Puyallup, Washington. Plaintiffs Savage Appraisal Services, Inc. is an S corporation with its principal place of business in Vail, Colorado. Both Plaintiffs conduct real estate appraisals on real estate located in their respective home states.

Plaintiffs argue that they have alleged a sufficient nexus between Rels and California and that "a California court may properly apply . . . California [law] at issue here to non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from California." <u>Wershba v. Apple Computer, Inc.</u>, 91 Cal. App. 4th 224, 243 (2001). Although not a California corporation, Defendant Rels is alleged to have conspired with Wells

13

United States District Court
For the Northern District of California

Fargo, which is headquartered in California.  Plaintiffs have also
alleged that the wrongful scheme was planned and implemented in
California and that many of the wrongful acts emanated from Wells
Fargo's California offices.  Complaint ¶¶ 121, 128.  These
allegations suffice at the pleading stage.  Therefore, sufficient
contacts between California and Rels exist to apply California law
to Rels.

Nevertheless, Plaintiffs' IIPEA claims fail for different
reasons.  Plaintiffs allege that "Defendants knew" about their
other "relationships with mortgage brokers and mortgage lenders"
and that they "successfully engaged in the conduct alleged in this
Complaint for the purpose of disrupting those relationships."
Complaint ¶ 129.  The vague and general assertion that Defendants'
conduct disrupted "relationships with mortgage brokers and lenders"
is insufficient to establish an economic relationship with a future
economic benefit.  In their opposition to the motion to dismiss,
Plaintiffs clarify that "Defendants' fraudulent scheme made it
impossible for blacklisted appraisers such as themselves to obtain
appraisal work from any mortgage [broker][5] where Wells Fargo is the
lender."  Opposition at 21.  However, this allegation is still too
vague to support an IIPEA claim.  The tort applies only "to
interference with <u>existing</u> noncontractual relations which hold the
promise of future economic advantage."  <u>Westside Ctr. Assocs. v.
Safeway Stores 23, Inc.</u>, 42 Cal. App. 4th 507, 524 (1996) (emphasis

_____

[5]Plaintiffs' opposition states that "Defendants' fraudulent
scheme made it impossible for blacklisted appraisers such as
themselves to obtain appraisal work from any mortgage lender where
Wells Fargo is the lender."  At the hearing, Plaintiffs noted that
they meant "any mortgage broker" and not "any mortgage lender."

14

**United States District Court**
For the Northern District of California

in original).  It does not protect a plaintiff's hypothetical

economic relationship "with the entire market of all possible but

as yet unidentified buyers" or customers.  <u>Id.</u>  Here, Plaintiffs

have only alleged unspecified relationships with unnamed parties

for unspecified future potential business.

Moreover, Plaintiffs fail to allege element (6) of the cause

of action, that Defendants' actions were wrongful by some legal

measure other than the interference itself.  In <u>Korea Supply</u>, the

California Supreme Court explained that an "act is independently

wrongful if it is unlawful, that is, if it is proscribed by some

constitutional, statutory, regulatory, common law, or other

determinable legal standard."  29 Cal. 4th at 1159.  Plaintiffs

allege that the independent wrongs are the RICO and USPAP

violations.  The USPAP has been incorporated into the California

Code of Regulations.  <u>See</u> Cal. Code Regs., tit. 10, § 3701 ("Every

holder of a license under this part shall conform to and observe

the Uniform Standards of Professional Appraisal Practice (USPAP)

and any subsequent amendments thereto as promulgated by the

Appraisal Standards Board of The Appraisal Foundation which

standards are herein incorporated into these regulations by

reference as if fully set forth herein.").

Violating the USPAP may serve as an independent wrong.  The

requirement that Defendants' conduct amount to independently

actionable conduct

> necessarily requires that the rules or standards provide for,
> or give rise to, a sanction or means of enforcement for a
> violation of the particular rule or standard that allegedly
> makes the defendant's conduct wrongful.  Seldom are the rules
> or standards of associations, trades and professions likely to
> give rise to legal causes of action.  However, internal
> remedies available within the association, such as a right of

arbitration between the aggrieved members, should suffice to establish independently actionable conduct.

<u>Stevenson Real Estate Servs. Inc. v. CB Richard Ellis Real Estate Servs., Inc.</u>, 138 Cal. App. 4th 1215, 1223 (2006) (internal quotation marks omitted).  Here, Plaintiffs have not alleged that a violation of the USPAP is independently actionable or how the USPAP is enforced.  Plaintiffs cannot sustain their interference claims merely by referring to the USPAP.  Because the Court has concluded that the RICO claims fail, they cannot serve as an independently wrongful act.  See <u>Jensen Enters., Inc. v. Oldcastle Precast, Inc.</u>, 2009 WL 440492, at *8 (N.D. Cal.); <u>Aho Enters., Inc. v. State Farm Mut. Auto. Ins. Co.</u>,  2008 WL 4830708, at *2-3 (N.D. Cal.).

Accordingly, the Court grants Defendants' motion to dismiss the IIPEA claims against them, with leave to amend.

CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions to dismiss (Docket Nos. 7 and 9).  The Court grants Plaintiffs leave to amend their complaint.  Plaintiffs may file and serve an amended complaint within fourteen days of this order. Defendants shall respond with an answer or a motion to dismiss twenty days thereafter.  A further case management conference will be held on the same date as the hearing on the motion.  If no motion to dismiss is filed, a further case management conference will be held on December 17, 2009 at 2:00 p.m.

IT IS SO ORDERED.

Dated: 10/15/09

_____
CLAUDIA WILKEN
United States District Judge

16