1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SOUND APPRAISAL and SAVAGE APPRAISAL
SERVICES, INC., on behalf of
themselves and all others similarly
situated,

        Plaintiffs,

  v.

WELLS FARGO BANK, N.A. and VALUATION
INFORMATION TECHNOLOGY, LLC, d/b/a
RELS VALUATION,

        Defendants.
_____/

No. C 09-01630 CW

ORDER GRANTING
DEFENDANTS' MOTIONS
TO DISMISS

    Plaintiffs Sound Appraisal and Savage Appraisal Services,

Inc., on behalf of themselves and all others similarly situated,

charge Defendants Wells Fargo Bank, N.A. (Wells Fargo) and

Valuation Information Technology, LLC, d/b/a Rels Valuation (Rels)

with violating the California common law right to fair procedures.

Defendants move separately to dismiss Plaintiffs' complaint.

Plaintiffs oppose the motions.  Having considered all of the papers

filed by the parties, the Court grants Defendants' motions to

dismiss.

BACKGROUND

    The following allegations are taken from Plaintiffs' first

amended complaint (FAC).  Plaintiff Sound Appraisal is a sole
proprietorship with its principal place of business in Puyallup,
Washington.  Plaintiff Savage Appraisal Services, Inc. is an S
corporation with its principal place of business in Vail, Colorado.
Sound Appraisal and Savage Appraisal provide residential real
estate appraisals to mortgage brokers and mortgage lenders.

Defendant Wells Fargo is a national banking association
chartered in Sioux Falls, South Dakota and headquartered in San
Francisco, California.  It is a diversified financial services
company that provides retail and business banking, insurance,
investments, mortgages and consumer finance across the United
States.  Wells Fargo provides residential mortgages through its
division, Wells Fargo Home Mortgage.[1]  It is the nation's largest
originator and second largest servicer of residential mortgages.

Defendant Rels is an Iowa limited liability company
headquartered in Minnetonka, Minnesota.  Rels is a "joint venture"
between First American Solutions, a subsidiary of First American
Corporation, and Wells Fargo Foothill, a subsidiary of Wells Fargo
& Co.  FAC ¶ 19.  Rels provides "real estate settlement services
including property appraisals."  Id.

The work of an appraiser is to provide an unbiased assessment
of a property's value.  Appraisers are commonly retained by
mortgage brokers and mortgage lenders in order to value the
property that will be used as collateral for a loan.  Appraisers
either work "in house" within a broker's or lender's business, or
as independent contractors.  In this case, Plaintiffs were hired by

---

[1]Collectively, these entities will be referred to as Wells
Fargo.

United States District Court
For the Northern District of California

1   Defendants as independent contractors.

2       The federal Financial Institutions and Reform Act of 1989

3   recognizes the Uniform Standards of Professional Appraisal Practice

4   (USPAP) as the generally accepted appraisal standards and requires

5   USPAP compliance for appraisers in federally related transactions.[2]

6   State appraiser certification and licensing boards; federal, state,

7   and local agencies; and appraisal trade associations require

8   compliance with USPAP.  According to USPAP, "[a]n appraiser must

9   perform assignments with impartiality, objectivity, and

10  independence, and without accommodation of personal interests."

11  USPAP Ethics Rule (Conduct).  An appraiser "must not perform as an

12  advocate for any party or issue" or "accept an assignment that

13  includes the reporting of predetermined opinions and conclusions."

14  Id.

15      In 2004, Wells Fargo changed the way it hired appraisers.

16  Whereas it used to contact appraisers directly, it began contacting

17  appraisers through an affiliate appraiser management company,

18  ValueIT.  ValueIT was an appraisal clearing-house that contracted

19  with independent appraisers to meet the needs of Wells Fargo and

20  other lenders.  ValueIT eventually changed its name to Rels

21  Valuation, a Defendant in this case.  Plaintiffs claim that "Rels

22  is a 'captive' puppet of Wells Fargo, either by virtue of partial

23  ownership by a common parent or economic power as its largest

24  ─────────────────

25      [2]A federally related transaction is any real estate financial
    transaction that a federal agency or any federally regulated
26  institution engages in or contracts for and that requires the
    services of an appraiser.  See 12 C.F.R § 34.42(f); 12 C.F.R.
27  § 225.62(f); 12 C.F.R. § 323.2(f); 12 C.F.R § 564.2(f); 12 C.F.R.
    § 722.2(e).

28

3

client."  FAC ¶ 42.

Plaintiffs allege that Wells Fargo is more interested in having a property appraised for a certain amount than it is in obtaining an appraisal that is fair and accurate and prepared in accordance with USPAP standards.  Id. ¶ 38.  Plaintiffs allege, "If an appraiser does not 'play ball' and produce a report affirming the property value or the parameters that Wells Fargo expects or wants, Wells Fargo, through Rels Valuation, suspends the appraiser or removes the appraiser from the list of preferred appraisers and, in essence, 'blacklists' the appraiser."  Id. ¶ 40.

In June, 2007, Sound Appraisal received a request from Wells Fargo through Rels to appraise a home in Enumclaw, Washington. After Sound Appraisal's sole proprietor, Don Pearsall, submitted a completed Uniform Residential Appraisal Report, Rels contacted Pearsall and asked that he alter the appraisal that he submitted. Id. ¶ 44.  Specifically, Rels' area manager, Randall Pierzina, asked Pearsall to remove all indications that the home in question was currently being remodeled.  Pearsall refused to alter the report, noting that doing so would be a violation of his ethical duty under USPAP.  In response, Pierzina yelled, "[Y]ou appraisers take USPAP too seriously."  Id. ¶ 52.  Pierzina then threatened to remove Pearsall from his list of "eligible" appraisers if he "did not receive the requested, altered report immediately."  Id.

Prior to this incident, approximately twenty-one to thirty-six percent of Sound Appraisal's business came from Defendants.  After this incident, Sound Appraisal no longer received appraisal requests from them.  When Pearsall inquired about the sudden decline in work, Pierzina stated that Pearsall "was on suspension

4

because [he] refused to comply with an OPUS issue." Id. ¶ 54.
Pierzina did not explain what an "OPUS issue" was and never
provided any further explanation for the suspension or notified
Pearsall of any procedure by which he could challenge his
suspension. Id.

On April 8, 2009, Pearsall received a phone call from Rels
offering an assignment. Pearsall responded, "I would love to take
the job, but aren't I on your blacklist?" Id. ¶ 55. The Rels
employee put Pearsall on hold to check, and then the employee said,
"I'm sorry, I wasn't supposed to contact you." Id. Sound
Appraisal alleges that this confirmed the existence of the
blacklist. Id. ¶ 49.

Savage Appraisals had been doing appraisals for Rels for
twelve years. In January, 2009, Savage performed two such
appraisal assignments for Rels. After Savage provided these
appraisals to Rels, a "Collateral Compliance Reviewer" for Rels
emailed Savage with information "to support an increased value" of
the appraised property. Id. ¶ 61. Savage then reviewed its
appraisal and determined that no such increased valuation was
appropriate. The next month, Savage received a letter from Rels,
which stated that he had been removed from its approved panel of
appraisers. The letter did not provide an explanation for the
removal. Savage alleges that, before being removed from Rels'
list, it received approximately eleven to seventeen percent of its
income from Rels.

The complaint also contains nine statements by confidential
witnesses who are appraisers in Arizona, Nevada, Washington,
Pennsylvania, Illinois, Virginia, Indiana and Oregon. These

witnesses allege that Rels stopped hiring them because they refused to alter appraisals upon Rels' request.

On April 14, 2009, Plaintiffs filed the complaint in this case. Plaintiffs allege that, in an effort to increase market share in the home mortgage business, Defendant Wells Fargo has engaged in a pattern and practice of pressuring appraisers to write appraisals designed to justify the loan even if the appraisal violates USPAP. Id. ¶ 38. Plaintiffs also claim that Defendants "utilize a host of indirect methods to communicate to the appraiser the value needed to fund the loan, and the value the appraiser is expected to 'hit.'" Id. ¶ 39. For example, Rels' appraisal order form indicates the "Borrower Estimated Value." Plaintiffs claim that this reflects the value that the appraiser is expected to meet or exceed in the appraisal.

Plaintiffs' original complaint alleged three causes of action: (1) violation of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, (2) interfering with Plaintiffs' prospective economic advantage and (3) violation of the California Unfair Competition Law. Defendants moved to dismiss all three claims. Plaintiff did not oppose dismissal of Unfair Competition claim with prejudice and the Court dismissed the other two causes of action with leave to amend. Plaintiff now pleads the same facts but asserts only a claim for violation of the common law duty to provide fair procedures.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule

United States District Court
For the Northern District of California

12(b)(6) for failure to state a claim, dismissal is appropriate
only when the complaint does not give the defendant fair notice of
a legally cognizable claim and the grounds on which it rests.
Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In
considering whether the complaint is sufficient to state a claim,
the court will take all material allegations as true and construe
them in the light most favorable to the plaintiff.  NL Indus., Inc.
v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this
principle is inapplicable to legal conclusions; "threadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements," are not taken as true.  Ashcroft v. Iqbal,
___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550
U.S. at 555).

DISCUSSION

I.   Application of California Law

     Before turning to whether Plaintiffs have stated a claim under
this cause of action, the Court addresses Defendant Rels' argument
that it does not have a sufficient nexus to California for
California law to apply to it.  Rels made this same argument with
respect to Plaintiffs' intentional interference with prospective
economic advantage claim brought in its original complaint.  The
Court rejected Rels' argument then, and it rejects Rels' argument
now.

     Rels is an Iowa limited liability company with its principal
place of business in Minnesota.  As noted above, Plaintiff Sound
Appraisal has its principal place of business in Puyallup,
Washington, and Plaintiff Savage Appraisal has its principal place
of business in Vail, Colorado.  Both Plaintiffs conduct real estate

7

appraisals on real estate located in their respective home states.

Notwithstanding these facts, Plaintiffs have alleged a sufficient nexus between Rels and California.  A "California court may properly apply . . . California [law] at issue here to non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from California."  <u>Wershba v. Apple Computer, Inc.</u>, 91 Cal. App. 4th 224, 243 (2001).  Although not a California corporation, Defendant Rels is alleged to have conspired with Wells Fargo, which is headquartered in California.  Plaintiffs have also alleged that the conspiracy to violate the California common law duty to provide fair procedures was planned and implemented in California and that many of the wrongful acts emanated from Wells Fargo's California offices.  Complaint ¶ 95.  These allegations suffice at the pleading stage.  Therefore, sufficient contacts between California and Rels exist to apply California law to Rels.

II.  Common Law Right to Fair Procedures

The California common law doctrine of fair procedure protects against arbitrary decisions by private organizations under certain circumstances.  <u>Potvin v. Metropolitan Life Ins. Co.</u>, 22 Cal. 4th 1060, 1066 (2000).  When the right to fair procedures applies, the decisionmaking "must be both substantively rational and procedurally fair."  <u>Pinsker v. Pacific Coast Society of Orthodontists</u>, 12 Cal. 3d 541, 550 (1974) (<u>Pinsker II</u>).  The doctrine has been applied in a variety of circumstances.  <u>James v. Marinship Corp.</u>, 25 Cal. 2d 721 (1944) (applied to labor unions that exercise a monopoly over the supply of labor to various employers); <u>Pinsker v. Pacific Coast Society of Orthodontists</u>, 1

United States District Court
For the Northern District of California

Cal. 3d 160 (1969) (<u>Pinsker I</u>) (applied to professional association
that determine the standards for the practice of the profession);
<u>Pinsker II</u>, 12 Cal. 3d 541 (same); <u>Ezekial v. Winkley</u>, 20 Cal. 3d
267 (1977) (applied to managed care organizations that hold
substantial economic power over physicians and their patients).

    "The underlying rationale of the <u>Marinship-Pinsker</u> line of
cases is that certain private entities possess substantial power
either to thwart an individual's pursuit of a lawful trade or
profession, or to control the terms and conditions under which it
is practiced." <u>Ezekial</u>, 20 Cal. 3d at 272.  The fair process
doctrine may be applied to private organizations only when the
private organization affects the public interest.

> Certain institutions and enterprises are viewed by the
> courts as quasi-public in nature: The important products or
> services which these enterprises provide, their express or
> implied representations to the public concerning their
> products or services, their superior bargaining power,
> legislative recognition of their public aspect, or a
> combination of these factors, lead courts to impose on these
> enterprises obligations to the public and the individuals
> with whom they deal, reflecting the role which they have
> assumed, apart from and in some cases despite the existence
> of a contract.

<u>Potvin</u>, 22 Cal. 4th at 1070 (internal quotation marks and citation
omitted).

    Moreover, to be liable for violating the right to fair
procedures, a private entity must wield substantial power that
significantly impairs the affected individuals' ability to work in
a particular field.  In essence, the law concerns exclusion or
expulsion from membership by a gatekeeper organization, like a
union or an insurance company.  For example, in <u>Marinship</u>, a union
exercised "a monopoly of the supply of labor" to various employers,
<u>Marinship</u>, 25 Cal. 2d at 731; in the two <u>Pinsker</u> cases, the

United States District Court
For the Northern District of California

9

**United States District Court**
For the Northern District of California

orthodontic associations at issue operated "a virtual monopoly" while "determin[ing] standards, both ethical and educational," for the practice of that profession, <u>Pinsker I</u>, 1 Cal. 3d at 166; <u>Pinsker II</u>, 12 Cal. 3d at 544; and in <u>Ezekial</u>, the hospital's surgical residency program at issue was part of an "extensive system[] of post-license private regulation," <u>Ezekial</u>, 20 Cal. 3d at 273.

To determine whether a private association or organization is required to provide fair procedure before exclusion, the judicial inquiry is "focused on the practical power of the entity in question to affect substantially an important economic interest." <u>Ezekial</u>, 20 Cal. 3d at 277.  "The entity need not have monopolistic control over the plaintiff's right to practice his profession and the plaintiff need not establish a complete termination of his right to practice his profession." <u>Palm Medical Group v. State Compensation Insurance Fund</u>, 161 Cal. App. 4th 206, 219 (2008) (internal citations and quotation marks omitted).  If an entity is a gatekeeper of a profession, the "duty to comply with the common law right to fair procedure arises if the entity possesses sufficient market power that exclusion significantly impairs the practice of the applicant's profession or affects a substantial economic interest." <u>Id.</u>; <u>see</u> <u>Potvin</u>, 22 Cal. 4th at 1072 ("If participating in managed care arrangements is a practical necessity for physicians generally and if only a handful of health care entities have a virtual monopoly on managed care, removing individual physicians from preferred provider networks controlled by these entities could significantly impair those physicians' practice of medicine.").

United States District Court
For the Northern District of California

It is especially important to note that, while loss of income after exclusion by a private entity is relevant, it is not "conclusive proof" that the exclusion impaired the plaintiff's ability to continue in the profession.  <u>Potvin</u>, 22 Cal. 4th at 1072. ("[A]ny evidence of Potvin's loss of income after his expulsion by MetLife, although relevant, would not be conclusive proof that removal from MetLife's preferred provider lists will <u>generally</u> reduce physician income so significantly as to impair the ability to practice medicine.") (emphasis in original).  "[N]o case holds that the doctrine [of fair procedure] applies to all private decisions which have economic ramifications for an individual, and it is quickly apparent that economic ramifications are not enough." <u>Yari v. Producers Guild of America</u>, 161 Cal. App. 4th 172, 179 (2008).

Here, Plaintiffs allege that "Wells Fargo Home Mortgage boasts that it is the nation's number one originator and number two servicer of residential mortgages.  Wells Fargo has more than 1200 home mortgage 'stores' and serves all 50 states."  FAC ¶ 98. Before Sound Appraisal was allegedly removed from Defendants' list of eligible appraisers, for the three years proceeding the removal, twenty one to thirty-seven percent of its business came from Defendants.  <u>Id.</u> ¶ 100.  Similarly, before Savage Appraisal was allegedly removed from Defendants' list, eleven to seventeen percent of its business came from Defendants.

Although these percentages are not insignificant, they do not, by themselves, establish a duty to provide fair procedures. Plaintiff has not alleged that removal from Defendants' list of appraisals has, in any way, impacted their ability to receive work

11

from other mortgage companies.  In fact, Plaintiffs allege that they do business with other "area mortgage brokers and major lenders" in addition to Defendants, such as Washington Mutual and Countrywide, "and others."  <u>FAC</u> ¶ 45.

Plaintiffs have not alleged that their ability to conduct appraisals for companies other than Defendants was impaired in any matter at all.  Wells Fargo's extensive national involvement in originating and servicing mortgages does not necessarily mean that it wields significant power over the appraising profession in the geographic areas in which Plaintiffs work.  Moreover, Plaintiffs have not alleged that Defendants control the appraising profession through licensing, regulating, training or in any other manner such that their alleged action of removing Plaintiffs from a list of approved appraisers substantially impaired their ability to continue to appraise property in their particular geographic area. <u>Potvin</u>, 22 Cal. 4th at 1072-73 ("[T]he common law right to fair procedure does not apply to an insurer's removal of a physician from its preferred provider list <u>unless</u> the insurer possesses power so substantial that the removal significantly impairs the ability of an ordinary, competent physician to practice medicine or a medical specialty in a particular geographic area, thereby affecting an important, substantial economic interest.") (emphasis in original).  No authority requires the imposition of the fair procedure doctrine simply because removal from a single company's list of appraisers it chooses to retain substantially affects the economic interest of a removed appraiser.  Defendants simply made a choice not to do business with Plaintiffs; they did not exercise power as a gatekeeper of a profession nor did they prevent

12

**United States District Court**
For the Northern District of California

1 Plaintiffs from pursuing employment by others.

2    Therefore, Plaintiffs' claim against Defendants for violation
3 of the duty of fair procedure is dismissed.  Because Plaintiffs'
4 claim fails, their cause of action based on Defendants' engagement
5 in a civil conspiracy to commit a violation of the duty of fair
6 procedure also fails.

7                          CONCLUSION

8    For the foregoing reasons, the Court grants Defendants'
9 motions to dismiss.  Docket Nos. 27, 28.  Because the Court has
10 already given Plaintiffs leave to amend their complaint once and
11 because further amendment would be futile, this dismissal is with
12 prejudice.  The clerk shall enter judgment and the parties shall
13 bear their own costs.

14    IT IS SO ORDERED.

15

16 Dated: 06/04/10          _____
17                          CLAUDIA WILKEN
                            United States District Judge
18
19
20
21
22
23
24
25
26
27
28

13